Eric C. COLEMAN and Linda Coleman, Husband and Wife, Timothy G. Carroll, Individually and as Executor of the Estate of Louis Carroll, Deceased, Appellants

v.

DUANE MORRIS, LLP, and Kathleen M. Shay, Esquire, Appellees.

Superior Court of Pennsylvania.

Argued July 17, 2012.

Filed Dec. 20, 2012.

---

Michael B. Pisani, Galdwyne, and Kenneth J. Zoldan, Bala Cynwynd, for appellants.

Abraham C. Reich, Philadelphia, for appellee.

BEFORE: MUSMANNO, MUNDY and FITZGERALD *, JJ.

OPINION BY MUSMANNO, J.:

Eric C. Coleman ("Coleman") and Linda Coleman ("Linda"), husband and wife, and Timothy G. Carroll ("Carroll"), individually and as executor of the estate of Louis Carroll, deceased,[1] (collectively "Plaintiffs") appeal from the Order granting judgment on the pleadings in favor of Duane Morris, LLP and Kathleen M. Shay (collectively "Defendants").[2] We reverse.

The pertinent facts of this case are as follows:

Plaintiffs [ ] Coleman and [ ] Carroll owned BCA Management, Inc. Their respective spouses[,] Linda [ ] and Louise Carroll (now deceased)[,] owned BCA Professional Services, Inc. [BCA Management, Inc. and BCA Professional Services shall hereinafter be referred to as "BCA."] Due to the fact that BCA had accumulated approximately $2.16 million in unpaid employee withholding, wage and sales taxes to state and local taxing authorities and the IRS for which Plaintiffs were personally liable, Plaintiffs began to consider a possible sale of the companies in order to alleviate their tax liability.

[ ] Coleman and [ ] Carroll entered into preliminary negotiations with Mirabilis Ventures, Inc. (hereinafter "Mirabilis") for the sale of BCA, and on or about May 19, 2006, [ ] Coleman sought Attorney Kathleen Shay's ["Attorney Shay"] legal advice concerning a nonbinding letter of intent. The letter of intent provided that Mirabilis would purchase 100% of BCA's stock for a minimum of $2.5 million.

Plaintiffs allege that Attorney Shay orally agreed to represent the Plaintiffs and BCA in the sale of stock to Mirabilis. Plaintiffs further allege that it was their understanding that Attorney Shay would bill BCA for her services, and

---

* Former Justice specially assigned to the Superior Court.

1. We note that Timothy G. Carroll died during the pendency of this appeal. By Order of July 11, 2011, we granted the Application of the personal representatives of his estate, Adam Carroll and Daniel Carroll, to substitute for Timothy G. Carroll.

2. An *amicus curiae* brief has been filed in support of Plaintiffs. Amicus also filed a post-submission communication. We deny Defendants' Application to strike the post-submission communication.

Mirabilis would pay the legal fees after acquiring BCA's stock.

Subsequently, Plaintiffs submitted a Draft Agreement for the sale of BCA to Attorney Shay for her review. The Draft Agreement provided that Plaintiffs would sell 100% of BCA's stock to Mirabilis and resign their positions in exchange for a payment of $300,000[fn] and new positions with Mirabilis. In addition, the draft agreement included a guaranty from Mirabilis that it would pay up to $2.2 million in unpaid taxes. Attorney Shay made certain revisions to the Draft Agreement, not described by Plaintiffs, and returned the Draft Agreement with her revisions to Mirabilis'[s] counsel.

[fn An earn-out that was twice BCA's gross profit in 2007.]

Plaintiffs allege that they asked Attorney Shay for confirmation that the sale of BCA would terminate their personal liability for the unpaid taxes, and she advised them that it would.

The provisions contained in the Draft Agreement[,] in addition to Attorney Shay's revisions[,] were incorporated into the final agreement, "Agreement for the Purchase and Sale of Common Stock." At the closing on July 14, 2006, Plaintiffs and Attorney Shay were advised that Avant Services would be substituted for Mirabilis in the Stock Purchase Agreement. Avant was formed two days prior to the closing and was owned by Mirabilis. Plaintiffs questioned Attorney Shay about the significance of the substitution of Avant, and she allegedly replied that Avant would assume liability for the taxes, assuring Plaintiffs that they had "gotten everything they wanted, and more" in the transaction. Plaintiffs subsequently executed the Stock Purchase Agreement.

BCA retained its identity after the stock transfer, and [ ] Coleman ... continued to operate the company. Several months after the closing, Plaintiffs learned that, despite the transfer, they would remain personally liable for the taxes until they were paid.

Then, [ ] Coleman was fired from BCA in the beginning of 2007. In March 2007, [ ] Coleman petitioned the Court of Common Pleas of Chester County to regain control of BCA after allegedly receiving complaints from former clients that BCA had canceled their contracts and otherwise acted improperly and unprofessionally. The Chester County [common pleas] court thereafter granted [ ] Coleman power of attorney and ordered him to perform an accounting.

[ ] Coleman alleges that he then learned that BCA's assets had been plundered, and the taxes had not yet been paid. The taxes that were owed by BCA were finally paid after the IRS seized a bank account in BCA's name as part of BCA's assets.

Plaintiffs ... commence[d] this action in assumpsit alleging Breach of Contract by filing their Complaint on November 5, 2010. They did not bring a Trespass (negligence) action. After Defendants filed Preliminary Objections on December 9, 2010, Plaintiffs filed their Amended Complaint on January 10, 2011. Defendants filed their Answer to Plaintiff's Amended Complaint with New Matter on February 18, 2011, alleging that Plaintiffs did not consult Attorney Shay concerning BCA's tax liability, and Plaintiffs concealed the nature and extent of BCA's tax liability from Defendants. Defendants further alleged that Duane Morris's invoices for Attorney Shay's legal services had not been paid. Plaintiffs filed their Reply to Defendants' New Matter on March 28, 2011, denying that they concealed the extent

of their tax liability from Defendants and alleging that they were without knowledge as to whether Defendants' invoices were ever paid.

Defendants filed their Motion for Judgment on the Pleadings on April 21, 2011, alleging that because Plaintiffs never paid for Duane Morris's services, they had not suffered any recoverable damages. Plaintiffs filed a reply on May 16, 2011, contending that they could recover for damages resulting from Defendants' legal malpractice under a theory of breach of contract because the case [that] Defendants relied on discussed legal malpractice in connection with the handling of a criminal matter. Defendants thereafter filed a Reply in Support of the Motion for Judgment on the Pleadings on May 23, 2011, and Plaintiffs filed a response on May 26, 2011.

[The trial c]ourt granted Defendants' Motion for Judgment on the Pleadings on May 26, 2011. On June 16, 2011, Plaintiffs timely filed an appeal from the May 26, 2011 Order. Plaintiffs then filed their [timely court-ordered] Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b) on July 12, 2011....

Trial Court Opinion, 4/23/10, at 1–5 (footnote in original).

Plaintiffs raise the following issue on appeal: "Did the trial court err in granting [the Defendants'] Motion for Judgment on the Pleadings?" Brief for Appellants at 5.

Plaintiffs contend that the trial court erred in granting Defendants' Motion for judgment on the pleadings by holding that the Pennsylvania Supreme Court, in *Bailey v. Tucker*, 533 Pa. 237, 621 A.2d 108, 115 (1993), limited damages for all legal malpractice actions based on breach of

contract to legal fees paid plus statutory interest. Plaintiffs assert that, under governing contract law, they are entitled to consequential damages for breach of contract.[3]

Our standard of review is as follows:

Entry of judgment on the pleadings is permitted under Pennsylvania Rule of Civil Procedure 1034, which provides that "after the pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings." Pa.R.C.P. 1034(a). A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law.

*Consolidation Coal Co. v. White*, 875 A.2d 318, 325–26 (Pa.Super.2005) (citations omitted).

Appellate review of an order granting a motion for judgment on the pleadings is plenary. The appellate court will apply the same standard employed by the trial court. A trial court must confine its consideration to the pleadings and relevant documents. The court must accept as true all well pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts which were specifically admitted.

We will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise.

---

**3.** The trial court held that, because Plaintiffs never paid the Defendants for the legal services rendered, *Bailey* precluded Plaintiffs from recovery for legal malpractice in connection with the sale of the BCA stock. *See* Trial Court Opinion, 11/4/11, at 8.

*Wachovia Bank, N.A. v. Ferretti,* 935 A.2d 565, 570–71 (Pa.Super.2007) (citations omitted). With these standards in mind, we review the Plaintiffs' contentions on appeal.

In *Bailey,* the Pennsylvania Supreme Court addressed two consolidated appeals. *Bailey,* 621 A.2d at 110. In each case, the criminal defendant filed a malpractice action in both trespass and assumpsit, against his criminal defense attorneys. *Id.* at 111, 112–13. In the first case, the trial court, after applying the two-year personal injury statute of limitations, concluded that the plaintiff's malpractice action was time-barred. *Id.* at 111. The Superior Court affirmed, and the Pennsylvania Supreme Court granted allowance of appeal. *Id.* In the second case, the trial court had granted the attorney's motion for judgment on the pleadings, based on its determination that the statute of limitations had run. *Id.* at 112. The Superior Court affirmed, and the Pennsylvania Supreme Court granted allowance of appeal. *Id.* After granting allowance of appeal, the Supreme Court in *Bailey* requested supplemental briefs on the issue of "whether there should be immunity for attorney malpractice in the criminal setting." *Id.*

The *Bailey* Court noted that an attorney malpractice action in a criminal case "can sound in trespass and/or assumpsit ...," and that the appellants therein had asserted both types of attorney malpractice. *Id.* The Court then discussed the attorney malpractice action in trespass in a criminal case, and indicated that there are "substantial differences" between a criminal and a civil attorney malpractice proceeding in trespass "which warrant distinct treatment of" the criminal cause of action. *Id.*

The *Bailey* Court reviewed various policy reasons advanced by the appellees in that case "as reasons for adopting absolute immunity for criminal defense lawyers,"

and concluded that (1) "the defendant [in a criminal malpractice action in trespass] must prove ... that he did not commit any unlawful acts with which he was charged as well as any lesser offenses included therein;" (2) although a criminal defendant, unlike his civil counterparts, may raise the ineffectiveness of his counsel as grounds for reversal, this opportunity for relief is designed to safeguard a criminal defendant's constitutional right to effective counsel, and does not provide a reason to eliminate the cause of action in trespass for malpractice by defense counsel; (3) the policy reasons advanced in support of attorney immunity in criminal malpractice actions in trespass, while not of such magnitude that all such actions should be barred, are nevertheless "substantial and important to the entire system charged with the administration of criminal law;" and (4) criminal legal malpractice trespass actions "are distinct from civil legal malpractice trespass actions, and as a result[,] the elements to sustain such a cause of action must likewise differ." *Id.* at 113–14.

The *Bailey* Court held that a plaintiff in a criminal legal malpractice action in trespass must establish the employment of the attorney; reckless or wanton disregard of the defendant's interest on the part of the attorney; "the attorney's culpable conduct was the proximate cause of an injury suffered by the defendant ...;" the criminal defendant suffered damages as a result of the injury; and the criminal defendant has "pursued post-trial remedies and obtained relief which was dependent upon attorney error...." *Id.* at 115.

The *Bailey* Court then addressed the legal malpractice action in assumpsit. *Id.* at 115. The Court reasoned and held as follows:

> We now turn our attention to the second type of malpractice issue: an assumpsit claim based on breach of the

attorney-client agreement. This claim is a contract claim and the attorney's liability in this regard will be based on terms of that contract. Thus, if an attorney agrees to provide his or her best efforts and fails to do so an action will accrue. Of course an attorney who agrees for a fee to represent a client is by implication agreeing to provide that client with professional services consistent with those expected of the profession at large.

Thus, this cause of action proceeds along the lines of all established contract claims. It does not require a determination by an appellate court of ineffective assistance of counsel, nor does the client need to prove innocence. **However, in anticipation of potential problems it is necessary to comment on the aspect of recoverable damages in such an action; quite simply, such damages will be limited to the amount actually paid for the services plus statutory interest. Our reasons for imposing this limitation are the same as those discussed above; to allow consequential damages in such a situation will engender the same problems as those we sought to limit above.**

*Bailey,* 621 A.2d at 115–16 (emphasis added).[4]

■ Based on our review of the Court's decision in *Bailey,* we conclude that the Court's discussion of the cause of action of malpractice in assumpsit must be viewed as a continuation of its previous discussion of the cause of action of malpractice in trespass, which specifically addressed attorney malpractice in a criminal case. We

believe such a conclusion is clear from the *Bailey* Court's language that its

> reasons for imposing this limitation [on damages in a malpractice case in assumpsit] are the same as those discussed above [in relation to the action in trespass for legal malpractice in a criminal case]; to allow consequential damages in such a situation will engender the same problems as those we sought to limit above [relating to the action in trespass for legal malpractice in a criminal case].

*Id.* at 115. Accordingly, we conclude that the limitation on damages imposed by the *Bailey* Court applies to an action in assumpsit based on a claim of attorney malpractice in a criminal case, but that limitation does not extend to an action for legal malpractice in assumpsit where the underlying action was, as here, a civil action. Thus, we conclude that the trial court in the present case erred in applying the *Bailey* limitation on damages, and we reverse the trial court on that issue.

■ Plaintiffs also contend the trial court erred in granting the Defendants' Motion for judgment on the pleadings because Plaintiffs allege that they are entitled to recover all actual damages incurred by them, including consequential damages, in this action. Plaintiffs cite *Condominium Ass'n Ct. of Old Swedes v. Stein–O'Brien,* 973 A.2d 475 (Pa.Cmwlth.2009), in this regard. In that case, involving a breach of contract counterclaim in assumpsit by a condominium owner, the jury found in the owner's favor and awarded him, *inter alia,* $213,000 in consequential

4. The *Bailey* Court then analyzed the statute of limitations as it applied to each case "in the context of a criminal malpractice action...." *Id.* at 115–17. The Court found that the applicable date for determination of the commencement of the statute of limitations was the date of termination of the de-

fense attorney/client relationship. *Id.* The Court concluded that, in both cases, the defendants had filed their malpractice actions after the expiration of the trespass and assumpsit statutes of limitations, and therefore affirmed. *Id.* at 116–17.

damages consisting of lost rental income. *Id.* at 480. On appeal by the condominium association, the Commonwealth Court stated that consequential damages, such as lost income, "can be appropriate in a breach of contract case," and further indicated that

> [a] party is entitled to recover whatever damages it suffered, provided the damages were such that would naturally and ordinarily result from the breach, or the damages were reasonably foreseeable and within the contemplation of the parties at the time of contracting and can be proved with reasonable certainty.

*Id.* at 483–84 (citation omitted); *see also Helpin v. Trustees of Univ. of Pa.,* 608 Pa. 45, 10 A.3d 267, 270 (2010) (stating that, where one party to a contract breaches the contract without legal justification, the party is entitled to recover, "unless the contract provided otherwise, whatever damages he suffered, provided (1) they were such as would naturally and ordinarily result from the breach, or (2) they were reasonably foreseeable and within the contemplation of the parties at the time they made the contract, and (3) they can be proved with reasonable certainty").

Plaintiffs also cite *Gorski v. Smith,* 812 A.2d 683 (Pa.Super.2002), in support of their contention. In that case, the appellees had filed a legal malpractice action in trespass and assumpsit against the attorney who had represented them in connection with a land sale agreement. *Id.* at 688–90. The jury found that the attorney and his law firm were negligent, had breached their contractual obligation to provide effective legal representation, and had acted in bad faith. *Id.* at 690. The jury awarded the appellees $435,000.00 as damages for the breach of contract claim, $26,000.00 for the bad faith claim, and no damages for the negligence claims. *Id.* Subsequently, the trial court granted the appellees' post-trial motion to mold the verdict, and molded it to include an award of $435,000.00 for negligence. *Id.* However, on appeal, the Superior Court vacated the award of damages on the negligence claim, holding that it could "discern no clear intent on the part of the jury" to award $435,000.00 in damages for the negligence claim. *Id.* at 708. The Court noted that the amount of $435,000.00 reflected the amount the appellees had paid to settle the buyer's claim in a bankruptcy proceeding, as well as the amount the appellees had paid in closing costs. *Id.* Thus, the *Gorski* case demonstrates that the appellees therein were permitted to recover damages for loss, not limited to attorneys' fees, in a civil legal malpractice action for breach of contract.

In the instant case, the Plaintiffs requested damages "including, but not limited to, the loss of the value of BCA's stock (estimated to be $2.5M), and the interest and penalties that have accrued on the taxes since July 14, 2006, when the Company was sold [to] Avant." Amended Complaint, 1/10/11, par. 39.

Defendants contend that the above claim for damages is inconsistent with proof of actual loss as required in legal malpractice actions. *See Mariscotti v. Tinari,* 335 Pa.Super. 599, 485 A.2d 56, 57 (1984) (stating that an essential element of a claim of legal malpractice, whether the action is denominated assumpsit or trespass, is proof of actual loss); *see also Kituskie v. Corbman,* 552 Pa. 275, 714 A.2d 1027, 1030 (1998) (holding that an essential element of a claim of legal malpractice pursued under either a contract or trespass theory is "proof of actual loss rather than breach of a professional duty causing only nominal damages, speculative harm or the threat of future harm"). Defendants assert that the Plaintiffs' claimed damages are speculative

and remote, and do not constitute an actual loss.

In the instant case, the Plaintiffs alleged that, prior to their execution of the Stock Purchase Agreement, Attorney Shay confirmed that the transaction would relieve Plaintiffs of their personal liability for accumulated, unpaid taxes. Amended Complaint, par. 18, 26. Plaintiffs alleged that they executed the Stock Purchase Agreement, and transferred one hundred percent of their stock to Avant. *Id.,* par. 29. Plaintiffs further asserted that, several months later, they learned that they remained personally liable for the taxes until they were actually paid. *Id.,* par. 30. Plaintiffs stated that the taxes were paid when the IRS seized a bank account in BCA's name. *Id.,* par. 35.

Accepting these allegations as true, as we must under our standard of review, we conclude that the Defendants were not entitled to judgment on the pleadings. The Plaintiffs' claim for damages constituted a claim alleging actual loss, as the Plaintiffs alleged that they had sold their stock to Defendants, without receiving the bargained-for result, *i.e.,* their release from liability for the owed taxes. Thus, the Plaintiffs' claim for the value of their stock, which they bargained away based on their reliance on Defendants' legal advice, and the interest and penalties that had accrued on the unpaid taxes, if proved, would constitute the actual losses sustained by Plaintiffs. Further, the alleged damages were such as would naturally and ordinarily result from the breach, were reasonably foreseeable and within the contemplation of the parties at the time they made the contract, and are capable of being proved with reasonable certainty. *See Helpin,* 10 A.3d at 270; *Gorski,* 812 A.2d at 690. Accordingly, we conclude that the trial court erred in granting judgment on the pleadings in favor of Defendants.

Order reversed; case remanded for further proceedings; "Application to Strike Purported Rule 2501(b) Letter" denied.