J-A32014-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| PEOPLEKEYS, INC., INSTITUTE FOR MOTIVATIONAL LIVING, INC., AND SANFORD G. KULKIN, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| WESTFIELD INSURANCE COMPANY, | |
| Appellee | No. 100 WDA 2015 |

Appeal from the Order December 16, 2014
In the Court of Common Pleas of Allegheny  County
Civil Division at No(s): GD 14-000527

BEFORE:  SHOGAN, STABILE, and STRASSBURGER,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED FEBRUARY 25, 2016**

This is an appeal from the December 16, 2014 order granting Westfield Insurance Company's ("Westfield") motion for judgment on the pleadings and dismissing PeopleKeys, Inc., Institute for Motivational Living, Inc. ("IML") and Sanford Kulkin's, (collectively, "PeopleKeys" or "Appellants"),[1] complaint with prejudice.  After careful review, we affirm.

PeopleKeys develops, markets, and utilizes behavioral assessments to match job applicants with prospective employers.  Sanford Kulkin was

---

[*]  Retired Senior Judge assigned to the Superior Court.

[1]  PeopleKeys and IML are affiliated business entities with principal places of business in Ohio.  Both are owned by Sanford Kulkin.  Complaint, 1/14/14, at ¶¶ 1–3.

PeopleKeys' Chief Executive Officer. On July 1, 2013, Appellants filed a complaint in the United States District Court for the Northern District of Ohio against PeopleKeys' former CEO, Brad Myers, another former employee, and E-Pysence, the company formed by these two employees, asserting claims for injunctive relief, copyright infringement, and related allegations. Myers filed a counterclaim/third-party complaint (the "counterclaim") asserting a single count of unfair competition against Appellants. This pleading alleged that Appellants instituted "sham litigation" against Myers "with the subjective intent of injuring Myers' ability to be competitive . . . and to interfere with his business relationships." Westfield's Answer, New Matter, and Counterclaim for Declaratory Judgment, 3/14/14, Exhibit A at ¶¶ 25–26. Specifically, the counterclaim in the federal lawsuit alleged:

> 19. Kulkin, PeopleKeys, and IML are fully aware that Myers does not have any of their alleged trade secrets or proprietary information, including knowledge of the algorithm for matching employers to job seekers and the underlying source code as described in the Complaint, particularly since Myers was not even aware of any such algorithm having been developed by PeopleKeys or IML during his employment with IML.
>
> 20. Nonetheless, because Myers was developing a competitive, if not superior, product in the behavioral assessment market, PeopleKeys and IML filed, and Kulkin caused to be filed, on July 1, 2013, the instant lawsuit against Myers to harm his competitive position in the marketplace and scare off start-up investors and customers by entangling Myers and E-Psyence in a federal lawsuit involving misappropriation of trade secrets and trademark infringement claims.

* * *

- 2 -

23. On July 1, 2013, PeopleKeys and IML filed, and Kulkin caused to be filed, the instant lawsuit against Myers, claiming that Myers misappropriated their trade secrets and intellectual property, *i.e.*, an algorithm for matching employers with job seekers, for purposes of starting a competitor company called E-Psyence.

24. The instant lawsuit is objectively baseless for numerous reasons, including but not limited to: (1) Myers was not privy to (and was not even aware of) PeopleKeys, IML, or Kulkin having developed such an algorithm during his employment with IML; and (2) the products and services that Myers is marketing through the platform E-Psyence are not based upon the DISC Theory utilized by PeopleKeys and IML to develop their products and services, but rather, Myers' products and services are developed utilizing Dr. Llobet's copyrighted content library.

25. PeopleKeys, IML, and Kulkin were aware of the above and filed the instant lawsuit with the subjective intent of injuring Myers' ability to be competitive through the E-Psyence platform and to interfere with his business relationships.

26. Said conduct constitutes sham litigation that serves no purpose other than to harm a business competitor.

*Id*. at ¶¶ 19–20, 23–26. Upon receipt of the counterclaim, PeopleKeys contacted their insurance company, Westfield, requesting coverage for defense of the counterclaim and indemnification under the policy issued by Westfield.

On August 23, 2013, Westfield sent a letter preliminarily informing PeopleKeys that coverage was unavailable because of certain exclusionary language of the policy. Westfield further advised that it had requested a formal coverage opinion and, upon receipt of that opinion, it would advise the insured if there was a determination that a defense was owed on the claim. Westfield's Answer, New Matter, and Counterclaim for Declaratory

Judgment, 3/14/14, at Exhibit C. Six days later, Westfield informed PeopleKeys that it was denying coverage because the counterclaim did not allege a claim for "personal and advertising injury" covered by the policy and because the factual averments of the unfair competition count fell within the policy's exclusion from coverage for "Knowing Violation of the Rights of Another" and "Material Published with Knowledge of Falsity." *Id*. at Exhibit D.

On January 14, 2014, PeopleKeys commenced the instant action in Pennsylvania against Westfield for breach of insurance contract and bad faith, contending that Westfield wrongfully refused to defend them against the counterclaim of unfair competition filed in Ohio federal court. In response, Westfield filed, *inter alia*, a counterclaim for declaratory judgment that it did not have a duty to defend. On July 24, 2014, Westfield filed a motion for judgment on the pleadings.

The trial court granted Westfield's motion for judgment on the pleadings and dismissed Peoplekeys' complaint with prejudice on December 16, 2014. PeopleKeys simultaneously filed an appeal to this Court and a motion for reconsideration before the trial court on January 14, 2015. The trial court denied reconsideration of this decision on January 27, 2015.[2]

_____

[2] When the trial court entered the order granting Westfield's motion for judgment on the pleadings, it did not rule specifically on Westfield's
*(Footnote Continued Next Page)*

- 4 -

PeopleKeys raises three issues on appeal:

1. Whether the trial court erred in failing to consider evidence that Appellee Westfield understood the claim at issue to be potentially covered under its Policy?

2. Whether the trial court erred in reading Ohio tort law elements of defamation and malicious prosecution into the Policy and reaching beyond a plain English reading of the Policy language in order to favor Westfield?

3. Whether the trial court erred in refusing to examine the totality of the pleadings to find coverage?

Appellants' Brief at 4–5.

Our standard of review of judgment on the pleadings is well-settled. A motion for judgment on the pleadings is similar to that of a demurrer in that it may be entered only when there are no disputed issues of fact, and the moving party is entitled to judgment as a matter of law. **Rourke v. Pennsylvania National Mutual Casualty Insurance Co.**, 116 A.3d 87, 91 (Pa. Super. 2015). Appellate review of an order granting a motion for judgment on the pleadings is plenary, and we apply the same standard employed by the trial court. **Id.** We will affirm the grant of the motion "only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise." **Id.** at 91 (citing **Southwestern Energy Production Co. v. Forest Resources, LLC**, 83 A.3d 177, 185 (Pa. Super. 2013) (citation omitted)).

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯

counterclaim for declaratory judgment. Thus, the counterclaim remained pending at the time the appeal was filed. On direction from this Court, Appellants were ordered to show cause why the appeal should not be quashed. Both Appellants and Westfield responded by letter asserting that the order appealed from effectively ended the litigation and disposed of all claims of all parties. We accept the parties' characterization of the procedural posture; accordingly, we have jurisdiction to decide this appeal. **See** Pa.R.A.P. 341(b) (1) ("A final order is any order that . . . disposes of all claims of all parties.").

***Gongloff Contracting, L.L.C. v. L. Robert Kimball & Associates, Architects & Engineers, Inc.***, 119 A.3d 1070, 1075–1076 (Pa. Super. 2015).

We can readily dispose of PeopleKeys' first claim that the trial court should have considered certain of Westfield's work product notes[3] that were produced in discovery relative to PeopleKeys' insurance claim. The subject notes were presented to the trial court during the argument of the motion for judgment on the pleadings and were attached to PeopleKeys' motion for reconsideration of the court's order granting Westfield's motion for judgment on the pleadings, both of which occurred subsequent to the close of the pleadings in this matter. In adjudicating judgment on the pleadings motions, a trial court "must confine its consideration to the pleadings and relevant documents. The court must accept as true all well pleaded statements of fact, admissions, and any documents properly attached to the pleadings . . . ." ***Coleman v. Duane Morris, LLP***, 58 A.3d 833, 836 (Pa. Super. 2012). Accordingly, Westfield's work product notes, produced during

_____

[3] Westfield's work product notes reference a reservation of rights letter that was apparently drafted on August 23, 2013, and approved for mailing on August 26, 2013. PeopleKeys' Motion for Reconsideration, 1/14/15, at Exhibit B (Work Product Notes). However, such letter is not in the record. The only letters included in the record dated around that time are the letter from Westfield preliminarily informing PeopleKeys that coverage was unavailable because of certain exclusionary language and notifying them that it was seeking a formal coverage opinion, ***see*** Westfield's Answer, New Matter, and Counterclaim for Declaratory Judgment, 3/14/14, at Exhibit C, and the letter denying coverage. ***Id***. at Exhibit D.

- 6 -

discovery and attached to a pleading filed subsequent to adjudication of the motion, could not be considered by the trial court in rendering its decision on the motion for judgment on the pleadings.

The parties next join issue over the breadth of Westfield's duty to provide PeopleKeys coverage for defense of Myers' counterclaim alleging unfair competition. Westfield claims that personal and advertising injury liability coverage was not triggered for defense of this claim because the underlying counterclaim did not facially state a cause of action for an offense covered by the policy. PeopleKeys, on the other hand, contends that the assertions in the counterclaim arguably fall within the definition of covered personal and advertising injury, *i.e.*, a cause of action in malicious prosecution and/or an oral or written publication that slandered Myers or disparaged Myers' goods, products, or services—injuries that are covered by the policy.

The interpretation of an insurance contract is a question of law and our standard of review is *de novo.* **Donegal Mutual Insurance Co. v. Baumhammers**, 938 A.2d 286, 290 (Pa. 2007) (quoting **Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.**, 908 A.2d 888, 893 (Pa. 2006)). It is agreed that Ohio law governs this dispute. Trial Court Opinion, 3/30/15, at 2; Appellants' Brief at 11; Appellee's Brief at 16.

The duty of an insurer to defend an insured is broader than the duty to indemnify and is absolute when the complaint contains any allegation that

could arguably be covered by the insurance policy. ***City of Sharonville v. American Employers Insurance Co.***, 846 N.E.2d 833, 837 (Ohio 2006). An exception to the absolute duty exists when all of the claims are each clearly and indisputably outside of the coverage. ***Id.*** (citation omitted). "Another way of stating the exception is that the insurer need not provide a defense if there is no set of facts alleged in the complaint which, if proven true, would invoke coverage for any claim." ***Granger, et al. v. Auto-Owners Insurance, et al.***, 40 N.E.3d 1110, 1115 (Ohio 2015).

> Whether an insurer has a duty to defend is determined from the allegations in the complaint. Where the allegations of the complaint unequivocally bring the action within the policy coverage, the duty to defend may arise from the complaint alone. ***Motorists Mut. Ins. Co. v. Trainor*** (1973), 33 Ohio St.2d 41, 294 N.E.2d 874. However, where the insurer's duty to defend is not clear from the pleadings, or the pleadings do not provide sufficient factual information to determine whether an insurer had a duty to defend but the allegations state a claim which is ***potentially or arguably*** within policy coverage, or where there is some doubt whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim. ***Willoughby Hills v. Cincinnati Ins. Co.*** (1984), 9 Ohio St.3d 177, 180, 9 OBR 463, 465, 459 N.E.2d 555, 558.

***Great American Insurance Company v. Hartford Insurance***, 621 N.E.2d 796, 798 (Ohio Ct. App. 1993) (emphasis in original).

Westfield's duty to defend is governed by the following provisions in the insurance policy:

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may at our discretion investigate any offense and settle any claim or "suit" that may result. . . .

Westfield's Answer, New Matter, and Counterclaim for Declaratory Judgment, 3/14/14, at Exhibit B ¶1(a). The policy defines "Personal and advertising injury" to mean injury arising out of the following offenses:

> b. Malicious prosecution;

* * *

> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

*Id*. at Section V—Definitions ¶14 (b) and (d).

However, Coverage B also describes certain claims that will be excluded from coverage:

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights of Another**

> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

**b. Material Published With Knowledge Of Falsity**

> "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

Westfield's Answer, New Matter, and Counterclaim for Declaratory Judgment, 3/14/14, at Exhibit B ¶2 (a) and (b).

The trial court determined that Westfield did not have a duty to defend because the unfair competition counterclaim was excluded from coverage. The trial court reasoned that:

> The employee's counterclaim alleged unfair competition, a matter not within the policy of insurance that had been issued in Ohio. Unfair competition is a cause of action that exists in Ohio, and differs from causes of action such as slander, libel, defamation, disparagement or malicious prosecution, which are covered by the insurance policy issued here.
>
> "The duty to defend (in Ohio) is determined by the scope of the allegations in the Complaint." Ward v. United Foundries, 129 Ohio St.3d 292, 951 N.E.2d 770, 773 (2011). Where ". . . the allegations are clearly and indisputably outside the contracted coverage, the insurer need not defend the insured." Ward, 951 N.E.2d at 773.
>
> The former employee's counterclaim was for unfair competition. In order to establish this claim, ". . . A party must show that the legal action is objectively baseless and that the opposing party had the subjective intent to injure the party's ability to be competitive." American Chemical Society v. Leadscope, Inc., 133 Ohio St.3d 366, 978, N.E.2d 832, 843 (2012). In Navigators Specialty Ins. Co. v. Beltman, No. 11-CV-00715-RPM, 2012 WL 5378750 (D. Colo. Nov. 1, 2012), the United States District Court For the District of Colorado determined that "Personal and advertising injury" coverage did not require coverage for assertions that the insured engaged in sham litigation to harm a business competitor. See also Holloway Sportswear Inc. v. Transportation Ins. Co., 58 Fed. Appx. 172 (6th Cir. 2003); Westfield Insurance Co. v. Trent, 2010 Ohio 5897 (Dec. 3, 2010).

- 10 -

It is evident that the former employee's counterclaim against Plaintiffs falls within an exclusion for coverage. Accordingly, Defendant had no duty to defend, and the counts for breach of contract and bad faith, necessarily, must fail.

Trial Court Opinion, 3/30/15, at 2–3.

PeopleKeys avers that the trial court erred when it: 1) construed the ambiguous policy definitions in Westfield's favor; 2) impliedly defined "malicious prosecution" and "oral or written declaration" according to Ohio tort law, rather than ascribing those terms their plain and ordinary meaning which would mandate a coverage conclusion;[4] 3) determined that because unfair competition is a distinct cause of action under Ohio tort law, it was excluded from the policy definition of "**Personal and advertising injury**"; and 4) did not consider the entirety of the pleadings in rendering its coverage decision. PeopleKeys also contends that the trial court's failure to address a number of their arguments deprived them of their day in court.

Westfield counters that Myers' unfair competition counterclaim was based upon PeopleKeys filing sham litigation which does not fall within the

---

[4] Under Ohio law, a cause of action for "malicious prosecution" requires, *inter alia*, the termination of a prior proceeding in the plaintiff's favor, **see Robb v. Chagrin Lagoons Yacht Club, Inc.**, 662 N.E.2d 9 (Ohio 1996), and absence of privilege is a required element for a cognizable cause of action for defamation in Ohio. **McPeek v. Leetonia Italian-American Club**, 882 N.E.2d 450, 453 (Ohio Ct. App. 2007). Significantly, statements made in a written pleading are absolutely privileged if they are reasonably related to the judicial proceeding in which they appear. **Morrison v. Gugle**, 755 N.E.2d 404, 416 (Ohio Ct. App. 2001) (citation omitted).

policy's definition of personal and advertising injury.[5] It argues that the Ohio Supreme Court has specifically recognized this particular cause of action under Ohio law and has held, "that to successfully establish a claim for unfair competition based upon a legal action, a party must show that the legal action is objectively baseless and that the opposing party had the subjective intent to injure the party's ability to be competitive." *American Chemical Society v. Leadscope, Inc*., 978 N.E.2d 832, 839 (Ohio 2012). Westfield asserts that the counterclaim alleges that PeopleKeys filed the federal lawsuit with the subjective intent of injuring Myers' ability to be competitive and to interfere with his business relationships. Westfield also alleges that PeopleKeys was fully aware that its claim was baseless but nevertheless instituted sham litigation against Myers. Thus, argues

---

[5] Westfield cites a number of cases for its position that Ohio courts have repeatedly held that unfair competition claims do not constitute "personal and advertising" injury within the meaning of a liability insurance policy. *See Motorists Mutual Insurance Co. v. National Dairy Herd Improvement*, 750 N.E.2d 1169 (Ohio Ct. App. 2001), *Holloway Sportswear, Inc. v. Transportation Insurance Co.*, 58 Fed. Appx. 172 (6th Cir. 2003) (applying Ohio law), and *Westfield Insurance Co. v. Trent*, No. E-09-050, 2010 WL 4925817 (Ohio Ct. App. 2010). This characterization of the holdings of these cases is an overstatement. For example, the underlying claim at issue in *Motorists Mutual* was an antitrust complaint; in *Holloway,* the claim was tortious interference with economic advantage; and in *Trent*, the insured claimed that the lawsuit against it did not include allegations of defamatory or disparaging statements. While these causes of action imply some elements of a claim of unfair competition, none of the cases hold outright that such a cause of action is not covered under "personal and advertising" injury within the meaning of a liability insurance policy.

Westfield, even if a claim for unfair competition did fall within the definition of "Personal and Advertising Injury," the exclusions for the "Knowing Violation of the Rights of Another" and "Material Published with Knowledge of Falsity" would nonetheless preclude coverage.

We agree with Westfield that the exclusions language in the policy nullifies its duty to defend. For this reason, we need not further discuss the respective arguments of the parties concerning whether the counterclaim alleges a personal or advertising injury covered under the policy.[6]

In their main brief, PeopleKeys conflates their discussion concerning the applicability of the policy's exclusions with their argument that the counterclaim for unfair competition is potentially or arguably covered as a personal and advertising injury. In their reply brief, PeopleKeys now suggests that under Westfield's interpretation of the exclusion provisions, "claims of slander, libel, defamation, disparagement or malicious prosecution could never be covered under its policy, since knowing and intentional conduct are elements that must be pled to create a viable cause of action." Appellants' Reply Brief at 2.

_____

[6] We note that, although the trial court determined that the "counterclaim alleged unfair competition, a matter not within the policy of insurance . . . [,]" it ultimately concluded that "the counterclaim . . . falls within an exclusion for coverage." Trial Court Opinion, 3/30/15, at 2–3. We may affirm the trial court on any basis." *Southwestern Energy Production Co. v. Forest Resources, LLC*, 83 A.3d 177, 184–185 (Pa. Super. 2013) (quoting *Richmond v. McHale*, 35 A.3d 779, 786 n.2 (Pa. Super. 2012)).

While PeopleKeys correctly states that inconsistencies in an insurance contract must be construed favorably to the insured, PeopleKeys overlooks Ohio case law that contradicts their position that coverage is due. In **Westfield Companies v. O.K.L. Can Line**, 804 N.E.2d 45, 53, (Ohio Ct. App. 2003), the Ohio Court of Appeals held that a "knowing violation of the rights of another" exclusion applied to "advertising injuries based upon libel, slander, disparagement, and invasion of privacy" because "the language of the exclusion mimicked the language of the libel, slander, disparagement, and invasion-of-privacy coverage provisions." **Id**.; **see also Westfield Insurance Company v. Factfinder Marketing Research, Inc.**, 860 N.E.2d 145, 154 (Ohio Ct. App. 2006) (observing that a "knowledge-of-falsity" exclusion bars coverage for advertising injury arising out of oral or written publication of material by or at the direction of the insured with knowledge of its falsity") (citation omitted); **see also Burlington Insurance Co. v. Eden Cryogenics LLC**, ___ F.Supp.3d ___, 2015 WL 5145554, at *8 (S.D. Ohio filed September 1, 2015) (applying Ohio law and concluding that a "Knowing Violation" provision prohibits coverage when jury determined that actor violated the rights of another knowing his or her conduct was likely to result in injury).

As noted, Westfield asserts that the policy exclusions relieve it from its duty to defend against alleged personal and advertising injury. The first exclusion relied upon by Westfield precludes coverage for "injury caused by

or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury." Westfield's Answer, New Matter, and Counterclaim for Declaratory Judgment, 3/14/14, Exhibit B, at ¶ 2(a). The other exclusion invoked bars coverage for any injury "arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity." *Id.* at ¶ 2(b).

In considering whether the exclusions apply, we review the allegations of the counterclaim. Before we undertake this assessment, however, we must address PeopleKeys' third issue that the trial court erred when it confined its analysis to the paragraphs of the counterclaim and refused to look to the totality of the pleadings in the underlying litigation in rendering its coverage determination. We conclude, however, that no error occurred in this regard because under Ohio law, "the duty to defend is determined by the scope of the allegations of the complaint." ***Ward v. United Foundries, Inc.***, 951 N.E.2d 770, 773 (Ohio 2001). "If the allegations state a claim that potentially or arguably falls within the liability insurance coverage, then the insurer must defend the insured in the action." ***Id***. However, if "the claims are clearly and indisputably outside the contracted coverage, the insurer need not defend the insured." ***Id***.

Here, the allegations of the counterclaim, *i.e.*, that PeopleKeys knowingly filed a sham lawsuit with the intent of harming a business

- 15 -

competitor, fall squarely within the plain language of the "Material Published with Knowledge of Falsity" exclusion. While not binding upon this Court, we observe that a decision from the United States District Court for the District of Colorado, in a markedly similar case applying Colorado law, came to the same conclusion. In *Navigators Specialty Insurance Co. v. Beltman*, No. 11-cv-00715, 2012 WL 5378750 (D.Col. filed Nov. 1, 2012), an insured corporation, Stratus Consulting, sought coverage for defense of a claim that it commenced sham litigation against another corporation, Chevron, causing damage to Chevron's reputation. *Id*. at *1. As in the matter *sub judice*, the insurance policy under scrutiny provided "personal and advertising injury" coverage for malicious prosecution and oral or written publication that slanders or libels . . . [or] disparages a person or organization's goods, products, or services. . . . *Id*. at *8 (quotation omitted). The policy also contained exclusions limiting coverage for "Knowing Violation of Rights of Another" and "Material Published with Knowledge of Falsity," the language of which is virtually identical to that included in the Westfield policy at issue here. *Id*. In response to the insured's claim that the suit filed against it could be understood as alleging malicious prosecution and/or an accusation of slander, libel, or disparagement, the federal court decided that it was "not necessary to pursue that legal analysis because coverage is barred by the exclusions" of the policy. *Id*. at *10. The *Navigators* Court concluded that the "Knowing

Violation of Rights of Another" exclusion barred coverage because the Chevron action alleged that the insured "intended to deceive," made "deliberate misrepresentations," and perpetuated "deliberate falsehoods" about Chevron and did so "knowingly and intentionally." *Id*. It likewise concluded that the "knowledge of falsity" language precluded coverage because the Chevron action "is replete with allegations of intentional misrepresentations." *Id*.

A similar result is warranted herein. The counterclaim averred that PeopleKeys knew that its claims against Myers were baseless, but they nevertheless instituted sham litigation against him with the subjective intent of injuring Myers' ability to be competitive and to interfere with his business relationships. Westfield's Answer, New Matter, and Counterclaim for Declaratory Judgment, 3/14/14, at Exhibit A ¶¶ 19–20, 23–26. These allegations explicitly plead that PeopleKeys knowingly published material with knowledge of its falsity and Westfield properly relied upon this exclusion provision in denying coverage to PeopleKeys.

For the foregoing reasons, we affirm the order granting judgment on the pleadings in favor of Westfield.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/25/2016