J-S15005-21

2021 PA Super 171

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ALL THAT CERTAIN LOT OR PARCEL OF LAND LOCATED AT 4714 MORANN AVENUE, HOUTZDALE, CLEARFIELD COUNTY, PENNSYLVANIA AND DESCRIBED WITH PARTICULARITY AT THE INSTRUMENT NUMBER 201002140 IN THE OFFICE OF RECORDER OF DEEDS OF CLEARFIELD COUNTY, PENNSYLVANIA; AND ALL THAT CERTAIN LOT OF PARCEL OF LAND LOCATED AT 168 LYNN STREET, MADERA, CLEARFIELD COUNTY, PENNSYLVANIA, AND DESCRIBED WITH PARTICULARITY AT INSTRUMENT NUMBER 201611124 IN THE OFFICE OF THE RECORDER OF DEEDS OF CLEARFIELD COUNTY, PENNSYLVANIA | : | No. 1064 WDA 2020 |
| | : | |
| APPEAL OF: PAMELA GAVLAK | : | |

Appeal from the Order Entered September 10, 2020
In the Court of Common Pleas of Clearfield County Civil Division at
No(s):  No. 2017-1281-CD

BEFORE:   LAZARUS, J., MURRAY, J., and COLINS, J.[*]

OPINION BY LAZARUS, J.:                    **FILED: AUGUST 23, 2021**

Pamela Gavlak appeals from the order, entered in the Court of Common

Pleas of Clearfield County, granting the Commonwealth's motion for judgment

---

[*] Retired Senior Judge assigned to the Superior Court.

on the pleadings in a civil forfeiture action filed pursuant to 42 Pa.C.S.A. §

5802(6)(i)(C).[1]   After careful review, we reverse and remand the case to the

trial court for proceedings consistent with the dictates of this opinion.

The trial court summarized the underlying facts of this case as follows:

This case [originates] with the criminal prosecution of four family members:  [Gavlak], her son, Robert Gavlak, her daughter, Catherine Anderson ("C. Anderson"), and her son-in-law, Todd Anderson ("T. Anderson").  All four individuals were charged with numerous felonies as a result of a lengthy investigation into the sale of controlled substances from the defendant properties[:] 4714 Morann Avenue, Houtzdale, Clearfield County, Pennsylvania ("Morann House")[;] and 168 Lynn Street, Madera, Clearfield County, Pennsylvania ("Lynn House").   Specifically, the Commonwealth alleged T. Anderson would bring cocaine back from Beaver Falls, Pennsylvania[,] to repackage and sell for profit. Gavlak, Robert Gavlak, and C. Anderson were also alleged to have sold the cocaine to individuals under the direction of T. Anderson. A total of eleven controlled buys were conducted by the Commonwealth; five of those controlled buys occurred within the Morann House, and two of those controlled buys occurred within the Lynn House.

At the time of the investigation, the Morann House was owned by Pamela Gavlak, and all four individuals resided within that property.  The Lynn House was purchased by T. Anderson from

_____

[1] We note that, ordinarily, appeals from decisions in forfeiture actions fall under the jurisdiction of the Commonwealth Court.  **See** 42 Pa.C.S.A. § 762 (vesting jurisdiction in Commonwealth Court in appeals from final orders of courts of common pleas in civil actions commenced by Commonwealth government).  Where an appeal in such a matter is filed with this Court, we have the discretion to transfer the appeal to the Commonwealth Court pursuant to Pa.R.A.P. 741(a) (failure of appellee to object to jurisdiction of appellate court operates to perfect jurisdiction in such court, unless otherwise ordered by court).  However, where, as here, neither party objects, we may elect to exercise jurisdiction over a forfeiture appeal.  **See id.  See also Commonwealth v. Bowers**, 185 A.3d 358, 362 (Pa. Super. 2018).  Because Gavlak has not challenged the exercise of appellate jurisdiction by this Court, we decline to transfer this appeal to the Commonwealth Court.

Gavlak's parents for $28,000 cash. C. Anderson was not listed on the deed as an owner of the Lynn House, and she had been unaware of how and for what amount T. Anderson purchased the property. During interviews with the four criminal defendants and others involved, the Commonwealth learned that T. Anderson, C. Anderson, and Gavlak would make frequent trips to Beaver Falls, Pennsylvania to buy cocaine. They would then bring the cocaine back to the Morann House[,] where it would be cut and repackaged for sale. All four individuals in the house knew and had seen T. Anderson package and sell cocaine. Through interviews, it was confirmed that T. Anderson and others under his direction would sell cocaine multiple times a day, every day for over two years. Further, the Lynn House was frequented by T. Anderson for short periods of time after the purchase of the property. C. Anderson admitted that transactions for cocaine occurred at the Lynn House.

As a result of the criminal charges, all four criminal defendants entered guilty pleas to possession with intent to deliver a controlled substance [("PWID")], conspiracy [to commit PWID], and criminal use of a communication facility. T. Anderson pleaded guilty to three additional counts of [PWID] and one count of dealing in proceeds of unlawful activity.

Trial Court Opinion, 9/3/20, at 1-2 (unnecessary capitalization and footnote omitted).

On May 24, 2018, the Commonwealth filed a petition for forfeiture and condemnation of the Morann House, as well as the Lynn House.[2] Following reinstatement of the petition on July 26, 2018, Gavlak filed a *pro se* answer on November 1, 2018. After obtaining legal representation, Gavlak filed an amended answer with new matter on September 9, 2019, which asserted three affirmative defenses: (1) the Morann House was lawfully acquired; (2)

_____

[2] Only the Morann House is at issue in this appeal. The Lynn House was forfeited to the Commonwealth by agreement of its owner, Todd Anderson, on December 17, 2017.

Gavlak did not know of or consent to the drug activity therein; and (3) forfeiture of the residence would be a constitutionally excessive fine. Both the Commonwealth and Gavlak filed motions for judgment on the pleadings. On September 3, 2020, after oral argument, the trial court entered judgment on the pleadings in the Commonwealth's favor and ordered the Morann House to be forfeited pursuant to 42 Pa.C.S.A. § 5802(6)(i)(C), concluding that the residence was an instrumentality of the drug crimes and that its value was not disproportionate to the gravity of the offenses committed. Gavlak filed a timely notice of appeal, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

On appeal, Gavlak argues the trial court erred in granting the Commonwealth's motion for judgment on the pleadings, specifically:

a. In determining the property subject to the forfeiture action was an "instrumentality" of the underlying criminal offenses;

b. In determining that Gavlak consented to the unlawful use of the subject property; [and]

c. In determining that the forfeiture was **not** constitutionally excessive where:

i. The pleadings do not establish a factual basis for the trial court's determination/finding as to the property's value;

ii. The pleadings do not establish a factual basis for the trial court's determination/finding as to the gravity of the underlying offense which formed the basis of the forfeiture;

iii. The pleadings do not establish a factual basis for the trial court's determination/finding as to the relation of the offense to other illegal activity; [and]

- 4 -

iv.     The pleadings do not establish a factual basis for the trial court's determination/finding as to the actual harm resulting from the crimes charged, aside from the generalized harm to society.

Brief of Appellant, at 4 (emphasis in original).

Our standard of review when considering the grant of a motion for judgment on the pleadings is as follows.

> Appellate review of an order granting a motion for judgment on the pleadings is plenary.  The appellate court will apply the same standard employed by the trial court.  A trial court must confine its consideration to the pleadings and relevant documents.  The court must accept as true all well pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts which were specifically admitted.

> We will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise.

*Southwestern Energy Prod. Co. v. Forest Res., LLC*, 83 A.3d 177, 185 (Pa. Super. 2013), quoting *Coleman v. Duane Morris, LLP*, 58 A.3d 833, 836 (Pa. Super. 2012).

Entry of judgment on the pleadings is permitted under Pennsylvania Rule of Civil Procedure 1034, which provides that "after the pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings."  Pa.R.C.P. 1034(a).  "A motion for judgment on the pleadings may summarily dispose of a case only when there exists no genuine issue of fact and the moving party is entitled to judgment as a matter of law."  *Pennsylvania Ass'n of Life Underwriters v. Foster*, 608 A.2d 1099, 1102 (Pa. Cmwlth. 1992) (internal citations omitted).  It is

- 5 -

fundamental that a judgment on the pleadings should not be entered where there are unknown or disputed issues of fact. ***Piehl v. City of Philadelphia***, 987 A.2d 146, 154 (Pa. 2009). "Since a motion for judgment on the pleadings is not a motion for summary judgment, no affidavit or depositions may be considered, nor is any matter before the court except the pleadings." ***Del Quadro v. City of Philadelphia***, 437 A.2d 1262, 1263 (Pa. Super. 1981). Therefore, "[j]udgment on the pleadings can only be granted in cases where, ***based upon the pleadings alone and any documents properly attached to them***, there exist no material issues of fact." ***Commonwealth. v. Riverview Leasing, Inc.***, 648 A.2d 580, 582 (Pa. Cmwlth. 1994) (internal citations omitted) (emphasis added). Further, "[i]t is clear that the briefs of the parties are not pleadings." ***Del Quadro***, 437 A.2d at 1263. ***See also*** Pa.R.C.P. 1017.

Here, the trial court's grant of judgment on the pleadings related to a forfeiture action initiated by the Commonwealth against Gavlak's property, which the Commonwealth claims was used to facilitate a cocaine distribution operation. "Real property used . . . to facilitate any violation of The Controlled Substance, Drug, Device and Cosmetic Act" is subject to forfeiture. 42 Pa.C.S.A. § 5802(6)(i)(C). Once the Commonwealth establishes that a property is subject to forfeiture, the burden shifts to the claimant to prove, by a preponderance of the evidence, that she acquired the property lawfully. ***Id.***, at § 5805(j)(2). Next, the burden then shifts to the Commonwealth to prove, "by clear and convincing evidence, that the property in question was

unlawfully used, possessed or otherwise subject to the forfeiture." *Id.*, at § 5805(j)(3). If the Commonwealth satisfies that burden, and the claimant alleges that she did not have knowledge of the unlawful activity or consent to the unlawful activity—i.e., the "innocent owner" defense—"the burden shall be on the Commonwealth to establish by clear and convincing evidence: (i) that the property was unlawfully used or possessed by the claimant; or (ii) if it appears that the property was unlawfully used or possessed by a person other than the claimant, that the person unlawfully used or possessed the property with the claimant's knowledge and consent." *Id.*, at § 5805(j)(4).

Forfeitures are characterized as "fines" if they constitute punishment for an offense. *United States v. Bajakajian*, 524 U.S. 321, 328 (1998). Accordingly, the government's power to subject a property to forfeiture is limited by the Excessive Fines Clause of the Eighth Amendment to the United States Constitution. *See* U.S. Const., Amdt. 8 ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."). Proportionality is the "touchstone" of any inquiry under the Excessive Fines Clause. *Bajakajian*, 524 U.S. at 334. In Pennsylvania, "[i]f the court finds that the forfeiture is grossly disproportional to the offense, the court shall reduce or eliminate the forfeiture as necessary to avoid a constitutional violation." 42 Pa.C.S.A. § 5805(k)(2). To determine whether civil *in rem* forfeiture of property constitutes an excessive fine, a court must assess "whether the value of the property sought to be forfeited is grossly disproportional to the gravity of the underlying offense. If it is grossly

disproportional, the forfeiture is unconstitutional." ***1997 Chevrolet &***

***Contents Seized from Young***, 160 A.3d 153, 191 (Pa. 2017).

As a threshold matter, a court must engage in an "instrumentality" analysis, which considers the relationship between the property to be forfeited and the underlying criminal activity.

> To be an instrumentality, the property itself is required to be "significantly utilized in the commission" of the offense. Indeed, there may be property that is connected to a crime, but is not significantly used in the crime. Considerations regarding this "significant utilization" assessment include: whether the property was integral to the commission of the offense—i.e., uniquely important to the success of the illegal activity; whether the use of the property was deliberate and planned or was merely incidental and fortuitous to the illegal enterprise; whether the illegal use of the property was an isolated event, or repeated; whether the purpose of acquiring, maintaining or using the property was to carry out the offense; and whether the illegal use of the property was extensive spatially and/or temporally.

***Id.*** at 185 (citations omitted).

Once the court determines that a property was used as an instrumentality of crime, the inquiry continues to an examination of proportionality. "Broadly speaking, when engaging in a proportionality review, a court compares the amount of the forfeiture to the gravity of the offense. If the amount of the forfeiture is grossly disproportional to the gravity of the offense, it is unconstitutional." ***Id.*** at 186, citing ***Bajakajian***, 524 U.S. at 336–37. In ***1997 Chevrolet***, our Supreme Court delineated the factors to be considered in a proportionality analysis:

> The factors, among others, to be considered in assessing the value of the property are:

(1) the fair market value of the property;

(2) the subjective value of the property taking into account whether the property is a family residence or if the property is essential to the owner's livelihood;

(3) the harm forfeiture would bring to the owner or innocent third parties; and

(4) whether the forfeiture would deprive the property owner of his or her livelihood.

The factors to be considered in gauging the gravity of the offense include:

(1) the nature of the underlying offense;

(2) the relation of the violation of the offense to any other illegal activity and whether the offender fit into the class of persons for whom the offense was designed should be considered;

(3) the maximum authorized penalty as compared to the actual penalty imposed upon the criminal offender;

(4) the regularity of the criminal conduct—whether the illegal acts were isolated or frequent, constituting a pattern of misbehavior;

(5) the actual harm resulting from the crime charged, beyond a generalized harm to society; and

(6) the culpability of the property owner.

*Id.* at 191-92.

Here, Gavlak argues that the pleadings do not warrant judgment in favor of the Commonwealth, as they leave factual issues to be resolved. Upon our review, we are constrained to agree. The pleadings do not provide a basis for a determination that no genuine issues of fact exist as to instrumentality, lack

of consent, or excessiveness. To the extent the Commonwealth averred facts relevant to those determinations in its petition for forfeiture, they were specifically denied by Gavlak in her answer. Additionally, in reaching its decision, the court looked to evidence not contained in the pleadings. Specifically, concluding that the value of the Morann House was "no greater than $60,000," *see* Trial Court Opinion, 9/3/20, at 7, the court relied on the home's 2006 purchase price of $60,000 and its tax bureau assessment of $42,000, as averred by the Commonwealth in its "Answer to [Gavlak's] Motion for Judgment on the Pleadings and New Matter in [the] Form of Motion for Judgment on the Pleadings." *Id.* at 7-8; Commonwealth's New Matter in [the] Form of Motion for Judgment on the Pleadings, 6/23/20, at ¶ 29. The trial court further accepted an appraisal of the house, dated September 2, 2020,[3] which valued the property at $50,000. Trial Court Opinion, 9/3/20, at 8 n.3. "When considering a motion for judgment on the pleadings a court must limit its review of the facts to those appearing *in the pleadings themselves*." ***Puleo v. Broad St. Hospital***, 407 A.2d 394, 396 (Pa. Super. 1979) (emphasis added). In looking to facts *dehors* the pleadings, the trial court erred. ***See Del Quadro***, 437 A.2d at 1263 ("[T]he fact that the lower court felt compelled to look outside the pleadings supports our conclusion [that judgment on the pleadings is unwarranted.]").

---

[3] The appraisal was submitted by the Commonwealth on September 2, 2020, well after the pleadings had closed, and even after the hearing on the parties' motions for judgment on the pleadings.

Moreover, the Commonwealth's petition contains no averments—much less undisputed averments—addressing the value of the property, as required by *1997 Chevrolet*.[4] Similarly, the Commonwealth failed to aver facts—other than providing a description of the underlying offenses—pertaining to the "gravity of the offense" analysis.

In addition, there is a factual dispute regarding Gavlak's culpability as the property owner. Specifically, although she pled guilty to drug offenses, Gavlak denied knowledge or involvement in the underlying drug operation *to the extent that it occurred in her home*. While here, unlike in *1997 Chevrolet*, Gavlak is among those convicted for the underlying crimes, the

_____

[4] With regard to the penalty factor of the gravity analysis, we note that the court utilized an incorrect analysis to reach its determination that the value of the Morann House was not disproportionate to the gravity of the offenses. When considering the penalty factor, "the actual penalty imposed (sentence, fine) upon the offender giving rise to the forfeiture is compared to the maximum authorized sentence for the underlying offenses for which the offender was convicted." *1997 Chevrolet*, 160 A.3d at 190. In gauging the gravity of the offense, our Supreme Court adopted the *Bajakajian* analysis, which it characterized as "defendant-culpability focused, rather than centered on the severity of the crime in the abstract." *Id.* (internal citations omitted). Where the actual penalties imposed constitute a "a fraction of the 'penalties authorized,'" a minimum level of culpability is inferred. *Id.* at 189, citing *Bajakajian*, 524 U.S. at 339 n.14. In this case, the trial court compared the value of the property to the maximum penalties that Gavlak and the other defendants faced and concluded that they were not disproportionate to one another. *See* Trial Court Opinion, 9/2/20, at 8 (finding gravity of offense not disproportional to value of property, where "Gavlak herself *faced the potential punishment of up to twenty-seven years of incarceration and a fine of $215,000*[.] . . . Calculated together, all four of the criminal defendants *faced a total of 158 years of incarceration and fines totaling over $1,200,000*.") (emphasis added). Our Supreme Court in *1997 Chevrolet* was clear that the proper comparison is between the maximum authorized penalties and the actual penalties imposed.

Supreme Court emphasized that regardless, the property owner's degree of

culpability is significant. The Court explained:

> [T]he degree of culpability is significant even if the trial court determines that the property owner did not satisfy a statutory innocent owner defense. **Constitutional protections are independent from statutory safeguards.** Indeed, the legislature's desire to protect an innocent property owner is not necessarily co-extensive with the constitution's protection against excessive sanctions. **As a constitutional matter, we find that assessing the gravity of the offense includes a determination of the degree of knowledge of a property owner.** Even a property owner, while not wholly without knowledge or granting consent, may lack full knowledge of criminal activity, or may bear only nominal or token blame for the illegal conduct serving as the foundation for the forfeiture.

**1997 Chevrolet**, 160 A.3d at 191 (emphasis added).

Judgment on the pleadings is appropriate only where "the moving

party's right to succeed is certain and the case is so free from doubt that the

trial would clearly be a fruitless exercise." **Southwestern Energy Prod. Co.**,

**supra**. Here, because there exist genuine issues of fact, the trial court erred

in granting judgment on the pleadings in favor of the Commonwealth. **Foster**,

**supra**. Accordingly, we reverse the order of the trial court and remand for

further proceedings consistent with the dictates of this opinion. Specifically,

the court is directed to allow the parties to conduct discovery, as required

under section 5805(a)(3),[5] and thereafter, conduct a trial, in accordance with section 5805(i).[6]

Order reversed; case remanded; jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/23/2021

---

[5] Section 5805(a)(3) provides that "[a]fter the answer is filed, the parties **shall be permitted to conduct discovery**."  42 Pa.C.S.A. § 5805(a)(3) (emphasis added).

[6] Section 5805(i) provides as follows:  "On the filing of an answer setting forth a right of possession, the case shall be deemed at issue and **a time shall be fixed for the trial**."  42 Pa.C.S.A. § 5805(i).