J-A08025-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JULIO DOMINGUEZ, OLGA CIFUENTES AND MARINA DOMINGUEZ CIFUENTES | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : | |
| v. | : : | No. 635 EDA 2020 |
| G. GUY SMITH, ESQUIRE | : : | |

Appeal from the Order Entered November 12, 2019
In the Court of Common Pleas of Delaware County Civil Division at
No(s):  CV-2018-003236

BEFORE:   PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED:  MAY 10, 2021**

In this legal malpractice action, Julio Dominguez, Olga Cifuentes and Marina Dominguez Cifuentes, (Appellants), appeal from the denial of their petition to amend complaint, and the grant of the motion for judgment on the pleadings filed by Appellee G. Guy Smith, Esquire (Smith).[1]

According to Appellants, they brought the underlying action "to recover damages for the fraud, lack of competent representation and breach of contract . . . based on Smith's representation of them in 2015."  Appellants' Brief at 3.  Also according to Appellants:

---

[*] Former Justice specially assigned to the Superior Court.

[1] Appellants filed their complaint in Philadelphia County on December 22, 2017; Smith objected to venue, and by order entered March 13, 2018, the case was transferred to Delaware County.

The people involved in this action are Marina Dominguez Cifuentes (hereinafter Mother), Thomas Karl, a multi-millionaire, and the Defendant Guy Smith, Esquire. To start I am going to say that [the] following story is unbelievable but true. It is unimaginable that the justice system would allow this to happen, but every fact stated herein can and will be demonstrated at trial. Further, it is important to note that the Karl [*sic*], is an admitted perjurer, bigamist, and an attorney.

Appellants' Brief at 4 (footnotes omitted).[2]

In response, Smith explains:

Thomas K[arl] and Marina Dominguez Cifuentes are the parents of two children, MAK and TMK. Julio Dominguez and Olga Cifuentes are Marina Dominguez Cifuentes' parents, and the grandparents of MAK and TMK. The contentious relationship of the parties is fully explained and laid out in three prior opinions of this Court. No complete or cogent understanding of the parties and the issues can be made without a review of the prior opinions of this Court, and that of the custody court, as adopted by this Court. What is relevant to this appeal is the protection from abuse order, ("PFA") obtained by Thomas K[arl] as to [Appellants] in this action, Marina Dominguez Cifuentes, ("Mother"), and Julio Dominguez and Olga Cifuentes, ("Grandparents"). [A]ppellee, G. Guy Smith, Esquire represented Grandparents in relation to the PFA order, which required Mother and Grandparents to stay away from the children when in the custody of Thomas K[arl].

Smith's Brief at 4.

Smith further summarized:

The three opinions were lodged in 3283 EDA 2017, decided May 23, 2019; 3321 EDA 2017, also decided May 23, 2019, and 3499 EDA 2017, decided May 24, 2019. There have been myriad additional appeals regarding related cases and claims, including

---

[2] To the extent Appellants editorialize and allege facts not of record, we emphasize it "is black letter law in this jurisdiction that an appellate court cannot consider anything which is not part of the record." ***Eichman v. McKeon***, 824 A.2d 305, 316 (Pa. Super. 2003) (citation omitted).

3654 EDA 2017; 3077 EDA 2018, 390 EDA 2018, 855 EDA 2019 and 1291 EDA 2019. None of these related cases resulted in opinions by this Court, as these appeals were discontinued or quashed. There have also been other proceedings in this Court and the Supreme Court, none of which implicate the decisions in the cases upon which the trial court relied to grant judgment on the pleadings in this action.

Smith's Brief at 4 n.3 (citations to Supplemental Reproduced Record omitted).

In this Court's prior decision affirming the trial court's modification of "the stipulation negotiated by counsel to resolve a Protection From Abuse petition," we observed that Appellants have been involved in multiple cases "with a long, complex, contentious, and convoluted history." *T.K. v. J.D. & O.C.*, No. 3283 EDA 2017 (Pa. Super. May 23, 2019) (unpublished memorandum at 1-2).

In this appeal, Appellants claim the trial court erred in denying their petition to amend their complaint, and granting Smith's motion for judgment on the pleadings. "When reviewing a trial court's ruling on a petition to amend a complaint, we grant the trial court broad discretion in evaluating the petition." *Diaz v. Schultz*, 841 A.2d 546, 549 (Pa. Super. 2004) (citing *Hamilton v. Bechtel*, 657 A.2d 980, 981 (Pa. Super. 1995)). "We will not disturb the sound discretion of the trial court absent an abuse of discretion." *Id.*

When the trial court enters judgment on the pleadings:

The standard to be applied upon review of a motion for judgment on the pleadings accepts all well-pleaded allegations of the complaint as true. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that

- 3 -

no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

Entry of judgment on the pleadings is permitted under Pa.R.C.P. 1034 which provides for such judgment after the pleadings are closed, but within such time as not to delay trial. A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. In determining if there is a dispute as to facts, the court must confine its consideration to the pleadings and relevant documents. The scope of review on an appeal from the grant of judgment on the pleadings is plenary. We must determine if the action of the court below was based on clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury.

*Forbes v. King Shooters Supply*, 230 A.3d 1181, 1186–87 (Pa. Super. 2020) (citations omitted), *appeal denied,* 240 A.3d 115 (Pa. 2020).

In the underlying legal malpractice action, Appellants claim Smith was negligent in providing legal advice in their PFA litigation.[3]  **See** Trial Court Opinion, 6/17/20, at 1-6.  Although Appellants recited nine issues — with subparts — in their court-ordered concise statement of errors complained on appeal, they have reduced their number of issues to five, stated as follows:

1. Whether the Trial Court erred when it determined that a secret payment of $10,000 from the opposing party to Appellants' Counsel is synonymous with a Court Ordered Payment for Attorney's fees.

---

[3] "T.K." filed three PFA petitions against Appellants in 2015:  Nos. 80484, 80483 and 80438 (the first against "M.D.C." and the latter two against "J.D. and O.C.").  Custody and divorce proceedings "remain ongoing," and "there have been related proceedings in the Court of Common Pleas of Philadelphia County and the Federal Court System."  Trial Court Opinion, 6/17/20, at 2.

2. Whether the Trial Court erred when it denied Appellants' First Request to Amend the Complaint and Refused to Rule on the Appellants' Second Request to Amend the Complaint - after Granting [Smith]'s Request to Amend his answer.

3. Whether the Trial Court erred when it ruled that there were no issues of material fact.

4. Whether the Trial Court erred when it determined that "understanding" a settlement agreement dictates that it was a professionally written agreement.

5. Whether the Trial Court erred when it determined that it is not a question of fact as to whether an Attorney who incorrectly advises his client that an action is permitted when in fact the action was prohibited.

Appellants' Brief at 2-3.

We have reviewed the record mindful of our aforementioned standards of review. The crux of Appellants' overall argument is that they have pled sufficient facts for their legal malpractice action against Smith to proceed. Each of Appellants' issues relates to their assertion that Smith failed to "perform in a professional manner" and exercise "ordinary skill and knowledge," such that Appellants "suffered damages . . . financially and mentally," because Smith's professional negligence resulted in a PFA order that deprived Appellants from seeing their grandchildren. ***See generally*** Complaint, 12/22/17.

In response, the Honorable Kathrynann W. Durham, sitting as the trial court, has authored a comprehensive opinion which accurately and specifically explains why Appellants' issues and arguments lack merit. For example, Judge Durham states:

> [Appellants'] argument that [Smith]'s alleged bad advice to agree to the stipulated PFA Order denied them the right to visit with the children is flawed because the Stipulated PFA Order did not control the who, what, when, where and how of the visitations, but rather, the custody proceedings would answer these questions.

Trial Court Opinion, 6/17/20, at 24. Judge Durham also observes that much of Appellants' argument is based on their "effort to re-litigate what has already been litigated," and is therefore precluded by *res judicata* and collateral estoppel. **See id.** at 19-23, 26.

Upon review, we discern no abuse of discretion or trial court error. Further, we find the trial court's opinion properly addresses and resolves Appellants' issues, such that further commentary by this Court would be redundant. We therefore adopt the trial court's June 17, 2020 opinion as our own in disposing of this appeal, and direct the parties to attach a copy of the opinion to any relevant future filings.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/10/21

IN THE COURT OF COMMON PLEAS,
DELAWARE COUNTY, PENNSYLVANIA

CIVIL ACTION – LAW

JULIO DOMINGUEZ, OLGA CIFUENTES     :     No. 18-3236
and MARINA DOMINGUEZ CIFUENTES     :     635 EDA 2020
    :
    :
v.     :
    :
G. GUY SMITH, ESQUIRE     :

Joseph F. Rizzo, Esquire – Attorney for Appellants/Plaintiffs
Eugene J. McGinnis, Jr., Esquire – Attorney for Appellee/Defendant

**DURHAM, J.**                         **DATE: 06/17/20**

## OPINION

Appellants/Plaintiffs Julio Dominguez, Olga Cifuentes, and Marina Dominguez Cifuentes (Plaintiffs) seek review of the following two Orders entered on November 12, 2019 wherein the Trial Court denied Plaintiffs' Motion to Amend the Complaint and granted Defendant's Motion for Judgment on the Pleadings, respectively. On December 11, 2019, Plaintiffs filed a Notice of Appeal. On December 18, 2019, the Trial Court, pursuant to Pa. R.A.P. 1925(b), ordered Plaintiffs to file a Concise Statement of Matters Complained of on Appeal. On January 7, 2020, Plaintiffs filed the aforementioned Statement.

### Factual and Procedural History

This matter arises out a legal malpractice action filed by Plaintiffs against Appellee/Defendant G. Guy Smith, Esquire. In their First Amended Complaint,

1



| JULIO DOMINGUEZ,<br>OLGA CIFUENTES<br>and<br>MARINA DOMINGUEZ CIFUENTES<br>*Plaintiffs*<br><br>v.<br>G. GUY SMITH, ESQUIRE<br>*Defendant* | : In the COURT of COMMON PLEAS<br>: of DELAWARE COUNTY<br>: PENNSYLVANIA<br>:<br>:     CIVIL ACTION<br>:<br>:     NO. 2018-03236<br>: |
| --- | --- |

**ORDER**

And now, this *15th* day of *November* 2019, upon consideration of the Motion of Defendant, G. Guy Smith, Esquire for Judgment on the Pleadings, it is hereby ORDERED and DECREED that the Motion is GRANTED. This action is hereby DISMISSED with prejudice.

BY THE COURT:

_____, J.

Plaintiffs alleged that they hired Defendant to represent them and provided negligent advice to them regarding their stipulation to a Protection from Abuse Order (PFA), and therefore, they were damaged because they could not see the children of Marina Dominguez Cifuentes (Mother). The PFA Actions are: *T.K. v. M.D.C.*, No. 15-80484 and *T.K. v. J.D. and O.C.*, Case Numbers 2015-80483 and 2015-80485.

In Case Number 15-80484, the PFA Order arose out of the custody and divorce proceedings in the Delaware County Court of Common Pleas between Mother and Thomas Karl (Father), father of their two minor children. *See* Compl. The other 2 PFA Actions are against Julio Dominquez and Olga Cifuentes who are the Maternal Grandparents of the children. *Id.* The custody and divorce proceedings remain ongoing. *See* Def. Mot. for Judgment on the Pleadings. There have been related proceedings in the Court of Common Pleas of Philadelphia County and the Federal Court System. *Id.*

As to the PFA Order against Mother, the facts are as follows: On April 14, 2015, Father filed a Petition for Protection from Abuse against Mother requesting a PFA Order on behalf of himself and the two minor children. *See* Def. Mot. for Judgment on the Pleadings, Ex. 3. On April 14, 2015, the Honorable Barry C. Dozor issued a Temporary PFA Order which granted an order for protection on behalf of Father and the children, and listed the matter for a hearing as to the request for a Final Protection from Abuse Order. *Id.*

On October 23, 2015, the parties entered into the aforementioned Stipulation under the Protection from Abuse Act and Uniform Prevention of

2

Child Abduction Act (Stipulated PFA Order), which was entered as an Order of Court by the Honorable Linda A. Cartisano on November 6, 2015. *See* Def. Mot. for Judgment on the Pleadings, Ex. 3. Paragraph 7 of the Stipulated PFA Order contained the following relevant provisions:

7. For three (3) years from the date of this Court's Order issued pursuant to this Stipulation:

   a. [Mother] will stay away from [Father] and the parties' children ... except for any visitation or custody with Children as ordered by the Court in existence entered prior to this date or hereafter.

   b. [Mother] shall not abuse, harass, stalk or threaten [Father] or any of the Children.

   c. [Mother] shall not contact [Father] (except for emergency concerning the children and only by text or email) or any of the Children by any means directly or indirectly except as permitted by Court Order entered prior to this date or hereafter.

   d. [Mother] is prohibited from any contact with [Father], the Children, or any other person protected under this agreement, at any location, including but not limited to any contact at [Father's] or other protected parties' residence, school, business, or place of employment. [Mother] is specifically ordered to stay away from the following locations for the duration of this order:

      1. 56 Sleepy Hollow Drive, Newtown Square, Pennsylvania, until [Father] vacates the residence.
      2. 2400 North Providence Road, Media, Pennsylvania.
      3. 211 Commerce Court, Suite 104, Pottstown, Pennsylvania.

*Id.* Paragraph 5(a) of the Stipulated PFA Order stated that Maternal Grandparents had no greater rights of visitation than Mother. *See* Def. Mot. for Judgment on the Pleadings, Ex. 4.

The facts regarding the Child Custody proceedings are as follows: Under

3

Case Number 2015-003199, the Custody action was initiated in the Delaware County Court of Common Pleas, prior to the PFA matter on April 9, 2015, through the filing of an Emergency Petition for Custody and Emergency Petition for Return of Passports. *See* Def. Mot. for Judgment on the Pleadings, Ex. 3. On April 24, 2015, Judge Cartisano issued the following Order on the Emergency Custody Petition wherein the Court ordered as follows:

1. Primary physical custody of the minor children ... is awarded to [Father] until further Order of Court.
2. Joint legal custody with respect to medical care and decisions is awarded to [Father] and [Mother].
3. Sole legal custody for all else awarded to [Father] until further Order of this Court.
4. Supervised partial physical custody of the minor children, ..., is awarded to [Mother,] as follows: two sessions a week for one hour each, supervised by security personnel who may carry concealed arms and observed by an independent Spanish/English speaker Interpreter; the said sessions to be in a classroom at St. Mary Magdalene Church in Media, Pennsylvania Mondays at 5:30p.m. to 6:30p.m. and Thursdays at 4:15p.m. to 5:15p.m.; costs to be borne by [Father;] no other persons are to be present at the sessions; and [Mother's] parents, Olga Cifuentes and Julio Cesar Dominguez are not to be on the grounds of the church during these sessions.

*Id.*

While the November 6, 2015 Stipulated PFA Order was in effect, the following events occurred. On June 5, 2017, Father appeared at St. Mary Magdelene Church to pick up the children from their scheduled supervised visit with Mother. *See* Def. Mot. for Judgment on the Pleadings, Ex. 3. The Church's pastor invited Father and the children to attend a "healing mass" in the chapel. *Id.* Father and the children entered the chapel and sat in a pew four rows from the front. *Id.* During the service, Mother appeared and entered

the chapel. *Id.* According to Father, the children became frightened and physically grabbed Father. *Id.* Father testified that Mother looked at him, smiled, and made a "hand gesture." *Id.*

Father further testified that seeing Mother outside the presence of security frightened the children "because of ... multiple incidents, kidnappings, abuse that have occurred...." *See* Def. Mot. for Judgment on the Pleadings, Ex. 3. The testimony of the security officer and the Spanish/English translator corroborated Father's testimony regarding the aforementioned events. *Id.*

On June 7, 2017, the Commonwealth of Pennsylvania filed a Complaint for Indirect Criminal Contempt against Mother due to an alleged violation of the Stipulated PFA Order. *See* Def. Mot. for Judgment on the Pleadings, Ex. 3. Following several hearings, the Honorable Dominic F. Pileggi entered an Order finding Mother guilty of Indirect Criminal Contempt at Case Number 2015-08084, which this Court affirmed on appeal on May 23, 2019. *Id.*

The facts as to the PFA Actions against Maternal Grandparents are as follows: Despite November 6, 2015 Stipulated PFA Order, Grandparents attended Mother's scheduled visitation period with the Children on December 28, 2015 whereupon the security guard called the police. *See* Def. Mot. for Judgment on the Pleadings, Ex. 4. Following a hearing on the indirect criminal contempt action filed against Maternal Grandparents, Judge Cartisano found the provisions of the Stipulated PFA Order to be ambiguous and dismissed the contempt charges against Maternal Grandparents on February 11, 2016. *Id.*

On May 2, 2016, Maternal Grandparents filed a Motion to Clarify or

5

Dismiss the PFA Order. *See* Def. Mot. for Judgment on the Pleadings, Ex. 4. After a hearing, Judge Cartisano struck the provision declaring that Grandparents had no greater rights than Mother. *Id.* Despite Judge Cartisano instructing the parties to send in an Order reflecting the change, no one did. *Id.* On January 11, 2017, Judge Cartisano subsequently denied Maternal Grandparents' Motion for Reconsideration of the aforementioned Oral Decision filed on December 27, 2016. *Id.* On September 11, 2017, Judge Cartisano memorialized the Oral Decision as a written Order striking the "no greater rights" provision and declining to make any other alterations to the stipulated Order. *Id.* Maternal Grandparents filed a Notice of Appeal of the September 11, 2017 Order in Case Numbers 2015-80483 and 2015-80485, which this Court affirmed on appeal on May 23, 2019. *Id.*

The Complaint in the matter *sub judice* was initially filed on December 22, 2017 in the Philadelphia County Court of Common Pleas. The matter was subsequently transferred to the Delaware County Court of Common Pleas on March 13, 2018. The Honorable G. Michael Green was initially assigned to this matter.

On September 9, 2019, Defendant filed a Motion for Judgment on the Pleadings, to which Plaintiffs answered. On September 19, 2019, Plaintiffs filed a Petition to Amend the Complaint, to which Defendant responded. As to the Motion for Judgment on the Pleadings, the Trial Court granted judgment on the pleadings on November 12, 2019. As to the Petition to Amend the Complaint, the Trial Court denied the Petition on November 12, 2019.

6

Plaintiffs filed a Motion for Reconsideration for the November 12, 2019 Orders, which the Trial Court denied on December 10, 2019. Plaintiffs' timely appeal followed.

**Issues Asserted on Appeal**

Plaintiffs assert the following issues on appeal:

This case involves misconduct and conspiracy of counsel to deprive his clients of their rights to enjoy the minority of their grandchildren. The matter has been extensively litigated and includes recently dismissed RICO action against Plaintiffs which included as harm their mere existence in the US. Plaintiffs brought claims of Breach of Contract, Legal Malpractice and Fraud.

Defendant filed a Motion for Judgement (sic) on the Pleadings based exclusively on Superior Court Dicta in a related action.

For judgement (sic) on the Pleadings to be granted there can be no Genuine Issue of Material Fact. *Aubrey v. Precision Airmotive LLC*, 2010 PA Super 169, 7 A.3d 256 (2010).

This appeal follows[.]

ERRORS OF THIS COURT

1. THE TRIAL COURT ABUSED ITS DISCRETION AND/OR COMMITTED AN ERROR OF LAW WHEN IT DETERMINED THERE WAS NO ISSUE OF MATERIAL FACT WHEN:

   a. PLAINTIFF MARINA DOMINGUEZ CIFUENTES CLAIMS THAT SHE WAS A CLIENT AND DEFENDANT G. GUY SMITH CLAIMED THAT SHE WAS NOT A CLIENT;

   b. IN THE MIDST OF THE UNDERLYING ACTION[,] THE DEFENDANT ACCEPTED $10,000 FROM THE OPPOSITION AND STOPPED WORKING FOR PLAINTIFFS;

   c. DEFENDANT RECOMMENED TO PLAINTIFFS A STIPULATION THAT NEITHER HE NOR THE COURT UNDERSTOOD;

2. THE TRIAL COURT ABUSED ITS DISCRETION AND/OR COMMITTED AN ERROR OF LAW WHEN IT PERMITTED DEFENDANT TO AMEND

7

HIS ANSWER AND DENIED PLAINTIFFS' MOTION TO AMEND THEIR COMPLAINT FILED ON SEPTEMBER 9, 2019 WITHOUT EXPLANATION.

3. THE TRIAL COURT ABUSED ITS DISCRETION AND/OR COMMITTED AN ERROR OF LAW WHEN IT PERMITTED DEFENDANT TO AMEND HIS RESPONSE AND CHOSE NOT TO RULE ON PLAINTIFF'S MOTION TO AMEND THEIR COMPLAINT EVEN THOUGHT IT STILL HAD JURISDICTION SINCE THE APPEAL HAS NOT BEEN DOCKETED IN THE SUPERIOR COURT.

4. THE TRIAL COURT ABUSED ITS DISCRETION AND/OR COMMITTED AN ERROR OF LAW WHEN IT DETERMINED THAT *RES JUDICATA* APPLIED WHEN THE SAME PARTIES WERE NOT INVOLVED IN BOTH MATTERS.

5. THE TRIAL COURT ABUSED ITS DISCRETION AND/OR COMMITTED AN ERROR OF LAW WHEN IT DETERMINED THAT COLLATERAL ESTOPPEL WAS APPROPRIATE WHEN COLLATERAL ESTOPPEL:

    a. REQUIRES THE SAME ISSUE AND THE ISSUES WERE DIFFERENT;

    b. WAS BASED ON DICTA IN A SUPERIOR COURT DECISION ON A DIFFERENT ISSUE AND THE SUPERIOR COURT MADE ITS OWN FACTUAL FINDINGS THAT WERE DIFFERENT THAN THE LOWER COURT WHILE ALL THE EVIDENCE WAS NOT BEFORE THE SUPERIOR COURT SINCE THE ISSUES WERE DIFFERENT.

6. THE TRIAL COURT ABUSED ITS DISCRETION AND/OR COMMITTED AN ERROR OF LAW WHEN IT DETERMINED THAT THERE WAS NO ISSUE OF MATERIAL FACT IN THE BREACH OF CONTRACT WHEN THE COURT FAILED TO CONSIDER MATERIAL FACTS INCLUDING BUT NOT LIMITED TO THE FOLLOWING:

    a. WHEN THE COURT DECIDED SUA SPONTE TO DISMISS THE PLAINTIFF'S COMPLAINT WITHOUT ANY ARGUMENT PRESENTED BY THE DEFENDANT STATING THERE WAS NO MATERIAL ISSUE OF FACT IN DISPUTE;

    b. DEFENDANT FAILED TO FILE A RESPONSE TO THE PFA;

    c. DEFENDANT FAILED TO FILE A RESPONSE TO THE FEDERAL COURT ACTION;

d. DEFENDANT FAILED TO FILE A MOTION FOR RULE 11 SANCTIONS AFTER THE FEDERAL COURT STATED THE ACTION WAS FRIVOLOUS;

e. DEFENDANT ACCEPTED $10,000 FROM THE OPPOSING PARTY AND STARTED TO REPRESENT HIM;

f. DEFENDANT SENT A MISLEADING LETTER TO THE PLAINTIFFS RESULTING IN THEIR VIOLATING THE PFA;

g. DEFENDANT RECOMMENDED A STIPULATION THAT HAD MULTIPLE PROBLEMS WITH IT, INCLUDING BUT NOT LIMITED TO THE PERIOD OF PROTECTION; NO EVIDENCE TO SUPPORT THE ENTERING OF THE STIPULATION; THE STIPULATION DIDN'T SPECIFY WHAT A VIOLATION WAS; THE STIPULATION CONTRADICTED THE CUSTODY ORDER; THE STIPULATION WAS CONTRARY TO THE WISHES OF HIS CLIENTS; AND THE TRIAL COURT DETERMINED WAS MISUNDERSTOOD BY HIS CLIENTS; THE STIPULATION ALLOWED THE OPPOSING PARTY TO WEAPONIZE THE STIPULATION[1];

h. DEFENDANT SENT A LETTER TO THE PLAINTIFFS STATING THEY COULD SEE THE GRANDCHILDREN;

i. DEFENDANT FAILED TO CREATE AN ESCROW ACCOUNT FOR THE GRANDPARENTS; [and]

j. DEFENDANT'[S] FAILURE TO CREATE AN ESCROW ACCOUNT HAS DENIED PLAINTIFFS FUNDS THAT THEY ARE DUE RESULTING IN ADDITIONAL LITIGATION;

7. THE TRIAL COURT ABUSED ITS DISCRETION AND/OR COMMITTED AN ERROR OF LAW WHEN IT DETERMINED THAT THERE WAS NO ISSUE OF MATERIAL FACT IN THE LEGAL MALPRACTICE WHEN THE DEFENDANT:

a. RECOMMENDED THAT PLAINTIFFS STIPULATE TO A THREE YEAR PFA WHEN THE EVIDENCE WAS THAT FATHER MADE UP THE ALLEGATIONS AGAINST PLAINTIFFS;

---

[1] It is important to note that none of the stipulation errors are negated by whether or not the plaintiffs understood the stipulation; the stipulation itself was poorly drafted.

9

b. DID NOT FILE A MOTION TO STRIKE THE PFA WHEN THE EVIDENCE WAS THAT FATHER MADE UP THE ALLEGATIONS AGAINST PLAINTIFFS;

c. DID NOT FILE A MOTION TO DISMISS THE PFA AFTER SEVEN MONTHS;

d. TOLD THE PLAINTIFFS THAT THEY COULD SEE THEIR GRANDCHILDREN;

e. DEFENDANT RECOMMENDED A STIPULATION THAT DIDN'T SPECIFY WHAT A VIOLATION WAS FOR PURPOSES OF RELEASING FUNDS;

f. DEFENDANT RECOMMENDED A STIPULATION THAT CONTRADICTED THE CUSTODY ORDER;

g. DEFENDANT RECOMMENDED A STIPULATION THAT WAS CONTRARY TO THE WISHES OF HIS CLIENTS;

h. DEFENDANT RECOMMENDED A STIPULATION THAT WAS DETERMINED AS A MATTER OF LAW TO NOT BE CLEAR, PRECISE AND SPECIFIC[;]

i. DEFENDANT RECOMMENDED A STIPULATION THAT ALLOWED THE OPPOSING PARTY TO WEAPONIZE THE STIPULATION;

j. DID NOT PROPERLY COLLOQUY THE PLAINTIFFS TO SHOW THAT THEY KNOWINGLY[,] VOLUNTARILY[,] AND INTELLIGENTLY ENTERED THE STIPULATION;

k. SUPPORTED HIS MISREPRESENTATION TO THE PLAINTIFFS WITH A LETTER WHEREIN HE STATED THEY COULD SEE THE GRANDCHILDREN WHENEVER THEY WERE WITH THE MOTHER[; AND]

l. TOLD THE PLAINTIFFS IN DECEMBER 2015 THAT THE GRANDPARENTS COULD GO TO VISITATION TO WITH MOTHER.

8. THE TRIAL COURT ABUSED ITS DISCRETION AND/OR COMMITTED AN ERROR OF LAW WHEN IT DETERMINED THAT THERE WAS NO ISSUE OF MATERIAL FACT IN FRAUD WHEN THE DEFENDANT:

10

a. WAS COMPENSATED FOR CONSPIRING AGAINST PLAINTIFFS;

b. MISAPPROPRIATED FUNDS THAT WERE MEANT FOR THE ESCROW ACCOUNT;

c. COMMITTED PERJURY ON THE STAND AGAINST TO KEEP FROM HAVING NEGATIVE EVIDENCE AGAINST HIM AND TO SUPPORT FATHER;

d. LIED TO THE PLAINTIFFS BY TELLING THEM THEY WOULD BE ABLE TO ENJOY VISITATION WITH THE GRANDCHILDREN; [AND]

e. RECOMMENDED PLAINTIFFS STIPULATE TO A THREE YEAR PFA WHEN THE EVIDENCE WAS THAT FATHER MADE UP THE ALLEGATIONS AGAINST PLAINTIFFS.

9. THE TRIAL COURT ABUSED ITS DISCRETION AND/OR COMMITTED AN ERROR OF LAW WHEN IT DETERMINED THAT THERE WAS NO ISSUE OF MATERIAL FACT IN FRAUD WHEN THE DEFENDANT:[2]

## Discussion

## The Trial Court properly denied Plaintiffs' Motion to Amend the Complaint.

It is settled that the trial court "enjoys 'broad discretion' to grant or deny a petition to amend" pleadings. Therefore, the Appellate Court uses an abuse of discretion standard in reviewing a trial court's order granting or denying a petition to amend. *Thom v. CDM Auto Sales*, 221 A.3d 681, 684–85 (2019).

Rule 1033 provides:

(a) A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, add a person as a party, correct the name of a party, or otherwise amend the pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. An

---

[2] Plaintiffs' Concise Statement of Matters Complained of on Appeal abruptly ended, and therefore, the Trial Court does not know what the remainder of the issue would further state as to Issue Number 9.

11

amendment may be made to conform the pleading to the evidence offered or admitted.

Pa.R.C.P. No. 1033(a). Thus, "[p]leadings may be amended at the discretion of the trial court after pleadings are closed, while a motion for judgment on the pleadings is pending, at trial, after judgment, or after an award has been made and an appeal taken therefrom." *Thom, supra.*

In their Motion for Permission to Amend the Complaint, Plaintiffs alleged that at a May 22, 2019 hearing in another matter related to Maternal Grandfather, Defendant committed perjury regarding what he told Plaintiffs. *See* Mot. for Permission to Amend the Compl. Plaintiffs alleged that Defendant is actively working with Father against Plaintiffs in this action and other actions. *Id.* Based on these alleged facts, Plaintiffs sought to amend the Complaint to include Intentional Infliction of Emotional Distress because such conduct constitutes malicious behavior. *Id.* In addition, Plaintiffs sought to amend the Complaint as follows: (1) to address new matters raised in "a Superior Court Opinion" and (2) to clarify other issues of malpractice allegedly revealed during discovery. *Id.* Plaintiffs averred that they attached an expert report, Exhibit B, to their Motion. *Id.* However, no such expert report was attached to the Motion. *Id.*

In response, Defendant initially argued that Plaintiffs failed to attach the proposed Complaint and the alleged Exhibit B, an expert's report to their Motion. *See* Resp. to Mot. for Permission to Amend the Compl. Upon review, Plaintiffs failed to file, with specificity, their Motion to Amend the Complaint.

12

Plaintiffs' Motion did not include the proposed Amended Complaint. Plaintiffs aver that he attached an expert report, but failed to include said Report.

As to the merits of Plaintiffs' Motion, Defendant argued that Defendant did not commit perjury and that even if it were proven to be untrue, Defendant's testimony, at the hearing in question, was protected by judicial privilege and the unspecified amendment regarding the Superior Court opinion and "other issues of malpractice" were not specific to permit amendment. *Id.* Defendant further argued that Plaintiffs failed to identify Defendant's false statements. Id.

As to judicial immunity in Pennsylvania, "[w]hen alleged libelous or defamatory matters, or statements, or allegations and averments in pleadings or at the trial or argument of a case are pertinent, relevant and material to any issue in a civil suit, there is no civil liability for making any of them." *Post v. Mendel,* 510 Pa. 213, 220, 507 A.2d 351, 355 (1986). Pursuant to the judicial privilege, a person is entitled to absolute immunity for "communications which are issued *in the regular course of judicial proceedings* and which are *pertinent and material to the redress or relief sought." Post, supra* at 355 (emphasis in original); *Bochetto v. Gibson,* 580 Pa. 245, 251, 860 A.2d 67, 71 (2004). This privilege is based on the "public policy which permits all suiters, however bold and wicked, however virtuous and timid, to secure access to the courts of justice to present whatever claims, true or false, real or fictitious, they seek to adjudicate." *Id.*

13

The Trial Court agreed that Defendant has immunity against any claims, including a claim for Intentional Infliction of Emotional Distress, based upon any and all alleged statements, whatever those statements may be, made by Defendant while testifying at the May 9th hearing. Plaintiffs' allegations of perjury in a hearing "related to another matter related to the herein complaint...with regard to what he told the plaintiffs" are vague and Plaintiffs' Counsel failed to attach the proposed pleading to the Motion. Furthermore, nothing precluded Plaintiffs' Counsel from referring to or attaching the Notes of Testimony from the May 22, 2019 hearing. In light of the judicial immunity protecting Defendant from being subject to the aforementioned claim, the Trial Court properly denied the amendment of the Complaint.

On November 17, 2019, Plaintiffs filed a Motion for Reconsideration of the November 12, 2019 Order denying the initial Motion to Amend the Complaint. The Trial Court denied the Motion for Reconsideration on December 10, 2019. Plaintiffs re-iterated the same arguments throughout the filings regarding the desire to amend its Complaint.

However, the Trial Court determined that the arguments lacked merit due to the vagueness of the Motion. Plaintiffs' Motion is so vague that the Trial Court is unclear as to which issues of malpractice that he is referencing. This would permit the Trial Court to speculate as to the merits of Plaintiffs' proposed Amendment.

The fact that the Trial Court allowed Defendant to amend his Answer and New Matter and denied Plaintiffs' request to do so is completely irrelevant to

14

the determination of whether Plaintiffs should be allowed to amend the Complaint. The Superior Court Opinion that both parties wanted to include in their proposed amendments of the pleadings was issued on May 23, 2019. Defendant's Motion for Leave to Amend his New Matter was timely filed on June 10, 2019. Defendant's Motion for Leave to Amend his New Matter clearly articulated the basis for the Motion. Defendant, in his Motion, averred the pertinent facts at issue; provided a detailed Memorandum of Law; and attached the two Superior Court Opinions he wanted to refer to in his Amended New Matter and the proposed Amended New Matter. Plaintiffs' Motion to Amend was not filed until September 19th which is ten days after Defendant filed his Motion for Judgment on the Pleadings and more than four months after the issuance of the Superior Court's Opinion. Again, Plaintiffs' Motion is so vague that it would require the Trial Court to guess what allegations of malpractice are being raised.

Both decisions were based upon the appropriate law and the applicability of such law to the facts presented. The Trial Court allowed Defendant to amend his New Matter because he wanted to refer to and discuss this Court's May 23, 2019 Opinion in *T.K. v. J.D. and O.C.* *See* Def. Mot. for Leave to Amend His New Matter, Ex. 3. In the May 23, 2019 Opinion, this Court concluded that Maternal Grandparents were aware that their rights were not to be adjudicated in the PFA proceedings, but in separate custody proceedings. *Id.* Defendant further argued that this Court's Opinion established that

15

Maternal Grandparents understood the scope and extent of the stipulated PFA Order. *See* Def. Mot. for Leave to Amend His New Matter.

Upon review of the Motion for Leave to Amend His New Matter, the Trial Court concluded that Defendant timely sought to amend his New Matter to refer to this Court's May 23, 2019 Opinion to establish the additional defenses of *Res Judicata* and/or Collateral Estoppel against Plaintiffs' attempt to assert facts that have already been adjudicated in the prior PFA and Custody proceedings as set forth in the aforementioned Opinion. Thus, the Trial Court properly exercised its discretion, in accordance with Pa. R.C.P. 1033, by allowing Defendant to amend his New Matter to raise such defenses.

Plaintiffs argue that the Trial Court was in error because it did not rule on a subsequent Motion to Amend the Complaint filed on December 2, 2019 even though the Appeal had not been docketed with this Court. Once the Trial Court received the Notice of Appeal filed on December 11, 2019, it could not rule on any pending Motions based upon lack of jurisdiction until the Appeal was decided.

On or about February 25, 2020, the Trial Court became aware from the Delaware County Office of Judicial Support that the Appeal had not been docketed with this Court. On February 28, 2020, this Court docketed the Appeal. The Trial Court assumed that when Plaintiffs filed the Notice of Appeal, the Office of Judicial Support performed its duty to notify this Court of the Appeal. Had the Trial Court known that the Office of Judicial Support had not docketed the Appeal, it could have and would have decided the December

2, 2019 Motion to Amend the Complaint.

## The Trial Court properly granted Defendant's Motion for Judgment on the Pleadings.

As to a Motion for Judgment on the Pleadings, the Appellate Court's standard of review is as follows:

> Entry of judgment on the pleadings is permitted under Pennsylvania Rule of Civil Procedure 1034, which provides that "after the pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings."

Pa.R.C.P. 1034(a); *Coleman v. Duane Morris, LLP*, 58 A.3d 833, 836-37 (2012). A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. *Coleman, supra.*

Appellate review of an order granting a motion for judgment on the pleadings is plenary. *Coleman, supra.* The appellate court will apply the same standard employed by the trial court. *Id.* A trial court must confine its consideration to the pleadings and relevant documents. *Id.* The court must accept as true all well pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts which were specifically admitted. *Id.* The Appellate Courts will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise. *Id.*

Before addressing the merits of Plaintiffs' allegations of errors as to the Motion for Judgment on the Pleadings, the Trial Court will address the

17

procedural allegations that it, *sua sponte*, decided Defendant's Motion for Judgment on the Pleadings without having Oral Argument. Pa. R.C.P. 1034(b) provides that "the court shall enter such judgment or order as shall be proper on the pleadings." In this instance, the Trial Court reviewed the following prior to making its ruling: Defendant's Motion for Judgment on the Pleadings, Plaintiffs' Response to the Motion, and **the pleadings.**

Based upon its review of the aforementioned documents, the Trial Court exercised its discretion and determined that Oral Argument was not necessary. The decision to not have Oral Argument on a Motion or Petition is not determining an issue *sua sponte*. *Sua sponte* means "of its own accord." That is the opposite of what occurred in this matter. Defendant filed a Motion. Plaintiffs responded to that Motion. Upon consideration of the Motion, Response and the pleadings filed in this matter, the Trial Court ruled appropriately. Therefore, this issue is completely without merit.

In his Motion for Judgment on the Pleadings, Defendant argued that the decisions of this Court issued on May 23, 2019, *T.J.K. v. M.D.C.*, No 3321 EDA 2017 and *T.K. v. J.D. and O.C.*, No. 3283 EDA 2017, precluded claims made by Maternal Grandparents in this matter. *See* Def. Mot. for Judgment on the Pleadings, Ex. 3-4. In *T.J.K. v. M.D.C.*, Mother appealed from the determination of indirect criminal contempt relating to the visitation with the children. In *T.K. v. J.D. and O.C.*, Maternal Grandparents appealed the Order modifying the stipulated PFA Order. Defendant argued that this Court's Opinions concluded that Maternal Grandparents were aware that their rights

18

were not to be adjudicated in the PFA proceedings, but in the separate custody proceedings. *See* Def. Mot. for Judgment on the Pleadings, Ex. 3-4.

Based upon this Court's determinations in the aforementioned Opinions, Defendant argued that judgment on the pleadings was appropriate because the doctrines of *Res Judicata* or Collateral Estoppel precluded Plaintiffs' claims against Defendant. *Id.* Defendant argued, in his Motion for Judgment on the Pleadings, that the Amended Complaint did not allege that Defendant represented any of the Plaintiffs in the custody proceedings. *See* Def. Mot. for Judgment on the Pleadings. Defendant further argued that in its prior Opinions, this Court determined that the visitation with the children was with Mother only and that no other persons were to be present, including Maternal Grandparents. *Id.* at Ex. 4.

In his Motion for Judgment on the Pleadings, Defendant argued that Maternal Grandparents knew the scope and extent of the Custody order as they had been previously warned that they were not to be present at Mother's visitations with the children. *See* Def. Mot. for Judgment on the Pleadings. Defendant further argued that the PFA Order did not determine Plaintiffs' visitation rights. *Id.*

In response, Plaintiffs argued that Defendant's Motion should be denied for the following reasons: (1) *res judicata* did not apply because the parties are not the same as in this action; (2) collateral estoppel did not apply because the issues are not the same as in this action and have not been fully litigated; (3) Defendant committed further acts of malpractice and additional torts since the

filing the Complaint; and (4) this Court improperly changed the lower court's findings of fact without determining whether the trial court abused its discretion. *See* Pl. Resp. to Def. Mot. for Judgment on the Pleadings.

"Technical *res judicata* (claim preclusion) and collateral estoppel (issue preclusion) are 'related, yet distinct' components of the doctrine known as *res judicata.*" *Wilmington Trust, N.A. v. Unknown Heirs*, 219 A.3d 1173, 1179 (Pa. Super. 2019). "[T]he decision to allow or to deny a prior judicial determination to collaterally bar relitigation of an issue in a subsequent action historically has been treated as a legal issue." *Id.*

*Res judicata* is a doctrine that operates to foreclose repetitious litigation by barring parties from re-litigating a matter that was previously litigated or could have been litigated. The doctrine only applies where four common elements exist:

> (1) identity of issues; (2) identity of causes of action; (3) identity of persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued.

*Wilmington Trust, supra.* Under the doctrine of *res judicata*, a judgment on the merits in a prior suit bars a second suit on the same cause of action or one that could have been brought in the prior action. *Id.*

The related doctrine of collateral estoppel or issue preclusion applies if:

> (1) the issue decided in the prior case is identical to the one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior-proceeding was essential to the judgment.

20

*Wilmington Trust, supra.* As distinguished from *res judicata*, which bars subsequent claims that could have been litigated in the prior proceeding, but which were not, collateral estoppel only bars litigation of issues that were actually litigated in the prior action. *Id.*

"The doctrine of collateral estoppel is a broader concept than *res judicata.* It operates to prevent a question of law or an issue of fact which has once been litigated and adjudicated finally in a court of competent jurisdiction from being relitigated in a subsequent suit." *Day v. Volkswagenwerk Aktiengesellschaft,* 464 A.2d 1313, 1318 (Pa. Super. 1983). Unlike *res judicata,* there is no requirement that there be an identity of parties between the two actions to invoke the bar. *Id.* at 1319. "Parties to a subsequent action need not be the same as those in the prior suit in order to raise the question of collateral estoppel. Collateral estoppel may be used as either 'a sword or a shield' by a stranger to the [prior] action, as long as the party against whom the defense is invoked is the same." *Id.*

Upon review of the Record, the claims in Plaintiffs' First Amended Complaint contain allegations that the Court of Common Pleas of Delaware County and this Court in the PFA and Custody Actions have already been determined. In the First Amended Complaint, Plaintiffs averred as follows:

4. Grandparent Plaintiffs retained Defendant to defend them from PFA charges that were filed against them and their daughter by their estranged son-in-law who wanted to keep them out of their grandchildren's life.

15. Plaintiffs were told that they would be able to see their grandchildren

under the terms of the PFA when their mother saw the children.

16. Simultaneously, Mother stipulated to her PFA in part because her parents were going to be able to see her children with her.

*See* Def. Mot. for Judgment on the Pleadings, Ex. 1. There is nothing in the

Amended Complaint alleging that Defendant was a party in the Divorce or

Custody actions. Defendant represented Maternal Grandparents in the PFA

Action and did not represent Plaintiffs in the Custody action.

Regarding Maternal Grandparents' alleged denial of due process as to the

modification of the negotiated PFA stipulation, this Court, in its Opinion in *T.K.*

*v. J.D. and O.C.*, stated as follows:

> [T]he over-arching claim to visitation rights advanced by Grandparents in this appeal rests on a demonstrably false premise. The essence of Grandparents' argument is that they only entered into a stipulation as a compromise to obtain visitation rights to see their grandchildren. (citations omitted). They maintain that once they complained that the stipulation was ambiguous, and the trial court agreed with them (incidentally saving them from the penalties for contempt); the court deleted the stipulated language they had relied on in the first place. Therefore, they claim, the court improperly denied them both the visitation rights that they had sought to achieve in the stipulation, and the opportunity for a new hearing on the stipulation.
>
> The record belies their claim. To the contrary, the stipulated PFA order amounted to a stay-away provision, to the effect that Grandparents would stay away from their grandchildren while they were with their Father. In addition, the Grandparents explicitly agreed not to "bother," "harass," or "stalk" Father, or "steal [the Children] or take them to Argentina, or run []away some place with them.
>
> Importantly, it was expressly understood that visitation rights were to be addressed in separate custody proceedings, not in the stipulated PFA order. ... A Spanish interpreter explained the entire arrangement to Grandparents in their native language. ... There is no basis in the record for the claim that Grandparents did not understand what they were agreeing to in settling the PFA order by stipulation.

*See* Def. Mot. for Judgment of the Pleadings, Ex. 4, pg. 9-10.

Regarding Mother's Appeal of the finding of indirect criminal contempt, this Court, in its Opinion in *T.K. v. M.D.C.*, adopted Judge Pileggi's Opinion as finding Mother of being guilty of indirect criminal contempt. *See* Def. Mot. for Judgment on the Pleadings, Ex. 3. As to Mother's understanding the requirements of the PFA Order, this Court adopted Judge Pileggi's findings as follows: (1) Mother was sufficiently conversant in English to understand the terms of the PFA Order; (2) Mother's prior conduct after the entry of the PFA Order demonstrated her understanding of the Order; and (3) the security guard and translator properly informed Mother that entering the Church would violate the PFA Order. *Id.*, p. 7; *See also* Ex. 4. This Court adopted Judge Pileggi's findings that the PFA Order did not govern the parties' custody or visitation rights and that these issues would be addressed in the Custody Proceedings. *See* Def. Mot. for Judgment on the Pleadings, Ex. 3, p. 5; *See also* Ex. 4, p. 9-10.

Upon review of the pleadings and this Court's Opinions, *res judicata* and collateral estopped apply because (1) the issues of Custody in this matter have not only been decided by the Opinions issued by Delaware County Court of Common Pleas but as well as by this Court on two separate occasions and (2) Defendant did not represent Plaintiffs in any custody proceedings. When Plaintiffs agreed to the entry to the PFA Order, Maternal Grandparents received only **an opportunity** to be awarded visitation with the Children **in the Custody Proceedings**, if the trial court deemed it appropriate.

23

Plaintiffs' argument that Defendant's alleged bad advice to agree to the stipulated PFA Order denied them the right to visit with the children is flawed because the Stipulated PFA Order did not control the who, what, where, when and how of the visitations, but rather, the custody proceedings would answer these questions. This Court explained the aforementioned analysis, in *T.K. v. J.D. and O.C.*, when it stated:

> This custody order is incorporated into the stipulated PFA order by way of paragraph 7.a of the PFA order: "[Grandparents] will stay away from [Father] and [the Children] except for any visitation or custody with Children as ordered by the Court in existence entered prior to this date or hereafter.

*See* Def. Mot. for Judgment on the Pleadings, Ex. 4, n. 4. The custody proceedings controlled, not the Stipulated PFA Order. Since Defendant was not Plaintiffs' counsel in the Custody Proceedings, Defendant cannot be found liable under the claims of legal malpractice, breach of contract, and fraud. Therefore, the Trial Court properly granted Defendant's Motion for Judgment on the Pleadings as to Plaintiffs' claims.

Plaintiffs raised the same issues several times in its Statement of Matters Complained of on Appeal. As to the allegation that there is a factual dispute as to whether Defendant represented Mother, this issue is of no moment because whether Mother was his client is irrelevant because Defendant did not represent any of Plaintiffs, including Mother, in the Custody Proceedings.

Plaintiffs argued that Defendant's acceptance of $10,000 from Father caused him to stop working on behalf of them. According to a letter dated November 2, 2015 from Defendant to Mother, Father would pay Mother's

24

outstanding legal fees in the amount of $10,000.00. *See* Pl. Resp. to Def. Mot. for Judgment on the Pleadings, Ex. B. Pursuant to the Pennsylvania Divorce Code, a trial court may award costs to be paid to a party as set forth in 23 Pa. C.S.A. Section 3323(e). "The court may award costs to the party in whose favor the order or decree shall be entered or may order that each party shall pay their own costs or may order the costs be divided equitably as it shall appear just and reasonable." 23 Pa. C.S.A. § 3323(e).

However, counsel fees are not awarded to either spouse automatically. "Actual need must be shown in order to justify an award." *Id.* Counsel fees are appropriate when necessary to put the parties "on a par" in defending their rights or in allowing a dependent spouse to maintain or defend an action for divorce. *Johnson v. Johnson*, 365 Pa. Super. 409, 415, 529 A.2d 1123, 1126 (1987). The payment of attorney fees for an opposing spouse is an accepted practice under the statute. Furthermore, the fact that Father paid Mother's legal fees does not, in of itself, prove that Defendant stopped working for Plaintiffs' interests. To reach that conclusion, courts would no longer order one party to pay the fees of another party if there was any semblance of impropriety wherein such a payment would be interpreted as a reason for that attorney receiving the funds to stop working on his or her client's behalf.

Plaintiffs' counsel made the following allegation in Footnote 10 of their Petition to support their belief that Defendant stopped working for Plaintiffs: "Throughout the course of this litigation, Smith has had access to documents that are not public record and could only have been provided to him by TK."

25

*Id.* Plaintiffs fail to identify and/or attach any such documents to support such a claim. Thus, this issue is completely without merit.

Plaintiffs argue that Defendant failed to establish an escrow account on Maternal Grandparents' behalf. As to this alleged failure, the First Amended Complaint did not plead any facts as to the lack of the establishment of an escrow account and/or cite any authority that the failure to do so supported the asserted claims.

In their effort to re-litigate what has already been litigated, Plaintiffs repeatedly argued that Defendant erred when he told Maternal Grandparents that they could see the children when they were with Mother and improperly advised them to enter into the Stipulated PFA Order. As previously stated, Judge Pileggi and this Court, in two separate actions, determined that the Stipulated PFA Order did not control the issue of custody, but rather, the Custody Proceedings controlled. Again, Defendant did not represent Plaintiffs in the Custody Proceedings. Despite Plaintiffs' vigorous protestations, this Court, in *T.K. v. J.D. and O.C.*, already determined that Plaintiffs understood and agreed to the Stipulated PFA Order in order to increase the likelihood that they could obtain visitation with the children through the custody proceedings. Therefore, all of the issues raised are without merit.

Plaintiffs made several allegations that Defendant failed to do the following actions in response to Father's Protection from Abuse Petition: (1) file a Motion to Strike the PFA Petition because Father made up the allegations; (2) file a Motion to Dismiss the PFA Petition; and (3) file a response to the PFA

26

Petition. Pa. R. Civ. P. 1901.6 provides as follows: "[t]he defendant is not required to file an answer or other responsive pleading to the petition or the certified order, and averments not admitted shall be deemed denied." Therefore, Defendant was under no obligation to file a response to Father's PFA Petition. Recognizing that a pleading is not a motion, failure to file such a motion is not required under the Pennsylvania Rules of Civil Procedure in Protection from Abuse matters, and therefore, failure to do so does not support any of Plaintiffs' claims.

The Pennsylvania Rules of Civil Procedure addresses the issue of Custody once a final PFA Order is entered. Pa. R. Civ. P. 1901.7(d) provides as follows:

> The custody provisions of a Protection from Abuse order are temporary. Either party may initiate custody proceedings pursuant to the custody statute at 23 Pa. C.S. §5321 et seq. **Any valid custody order entered after the final Protection from Abuse order supersedeas the custody provisions in paragraph 5 of the Protection from Abuse Order.**

In this matter, the Custody Order was incorporated into the Stipulated PFA Order wherein Maternal Grandparents agreed to not stalk or harass Father or steal and run away with the children and all parties agreed that the PFA Order was subject to "any existing Custody Order." *See* Def. Mot. for Judgment on the Pleadings, Ex. 4 at 4, n. 4, 9-10. While Plaintiffs repeatedly argue that they had the same rights as Mother to see the children under the subsequently stricken "no greater rights" provision in the Stipulated PFA Order, this Court discussed how that provision **did not** grant visitation to Maternal Grandparents during the supervised visitation with Mother. *Id.* at 10.

27

> The Grandparents currently are not allowed – they're not present – **they're not allowed to be present at the supervised visitation and this does not change that.** The best explanation of the now-deleted language is provided by the trial court, who observed, "No, but if, God forbid, something happens to their daughter, they would have rights under the law to apply for grandparents' rights."

**(emphasis in original)** *Id.* With or without the stricken "no greater rights" provision in the Stipulated PFA Order, the Record is clear that all parties knew, understood, and agreed that Maternal Grandparents were not allowed to attend Mother's supervised visitation with the children. By agreeing to the Stipulated PFA Order, Plaintiffs gained only an opportunity, not a guarantee, to receive more visitation with the children. Therefore, these numerous issues raised are without merit.

As to Defendant's alleged actions in the Federal Court action, Plaintiffs alleged in the First Amended Complaint that Father sought to have Maternal Grandparents turn in their passports from Argentina. *See* Am. Compl. Plaintiffs further alleged that Defendant erred in failing to file a response or a Fed. R. Civ. P. 12(b)(6) Motion in response to the action. *Id.* Plaintiffs failed to provide any facts that support what damage or prejudice, other than payment of attorneys' fees, they suffered as a result of Defendant's actions or lack thereof. *Id.* In his Amended Answer, Defendant alleged that he successfully represented Maternal Grandparents in the Federal Court action. *See* Am. Answer. The fact that Defendant did not file a response does not, in of itself, prove that he failed to adequately represent Plaintiffs, breached the contract between the parties, or committed fraud.

28

Upon review of the pleadings, the Federal Court Action was resolved. Defendant's invoice, Plaintiffs' Exhibit A to the Complaint, indicated that on July 22, 2015, Judge Savage, in the Federal Court Action, issued a decision. *See* Compl., Ex. A. Plaintiffs' Complaint is vague in its averments as to the Federal Court Action, and therefore, the Trial Court is left to read what was plead. In light of the pleadings, Plaintiffs failed to plead sufficient facts to support their claims as to any deficiency regarding the Federal Court Action, and therefore, this issue is without merit.

**Conclusion**

For the aforementioned reasons, the Trial Court respectfully requests that its Decisions be **AFFIRMED.**

**BY THE COURT:**

**KATHRYNANN W. DURHAM, J.**

29

FILED
06-17-2020 03:09 PM
OFFICE OF JUDICIAL SUPPORT
DELAWARE COUNTY, PA